

DA 06-0141

## IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2008 MT 244

STATE OF MONTANA,

        Plaintiff and Appellee,

    v.

SHIRLENE A. WALKER,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DC 2005-092
Honorable David G. Rice, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Jeremy S. Yellin, Attorney at Law, Havre, Montana

    For Appellee:

        Hon. Mike McGrath, Montana Attorney General; C. Mark Fowler,
Assistant Attorney General, Helena, Montana

        Cyndee Peterson, Hill County Attorney; Gina Bishop, Deputy County
Attorney, Havre, Montana

                Submitted on Briefs:  January 31, 2007
                          Decided:  July 8, 2008

Filed:

                    Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1      Shirlene Walker appeals her conviction in the District Court for the Twelfth Judicial District, Hill County, of Driving Under the Influence of Alcohol (DUI), fourth or subsequent offense, a felony.  We affirm.

¶2      We address the following issue on appeal:  Whether Walker's waivers of her right to counsel and her right to trial at the time of her 1999 DUI convictions were made knowingly, intelligently and voluntarily.

## Factual and Procedural Background

¶3      On July 11, 2005, Walker was charged by Information with felony DUI and four misdemeanor counts: speeding, driving while license suspended or revoked, failure to carry proof of insurance, and failure to use a seatbelt.  Because Walker's driving record indicated that she had six prior DUI convictions, this latest charge of DUI was enhanced to a felony pursuant to § 61-8-731, MCA.  According to a certified copy of Walker's driving record, her six prior DUI convictions occurred: on August 28, 2003, in Hill County Justice Court; on September 27, 1999, and January 6, 1999, in Harlem City Court; on October 26, 1992, and July 10, 1992, in Browning Tribal Court; and on January 11, 1985, in Harlem City Court.

¶4      Walker filed a Motion to Dismiss Information or Complaint on December 13, 2005, alleging that four of her prior DUI convictions were constitutionally infirm because she did not have the assistance of counsel.  She further argued that the conviction that occurred on January 11, 1985, should have been expunged because, based on the law that

2

existed at that time, she did not receive another DUI within five years of that conviction. Walker also argued that the two 1992 convictions should have been expunged under the same premise. She maintained that even though the law changed in 1995, the law in effect at the time of the conviction controls. Walker did not challenge her August 2003 DUI conviction.

¶5      On December 13, 2005, Walker entered into a plea agreement with the State wherein she agreed to plead guilty to the felony DUI charge and the misdemeanor driving without proof of insurance charge in exchange for the State dropping the rest of the misdemeanor charges. In addition, she expressly reserved her right to appeal any unfavorable decision regarding her challenge to her previous DUI convictions.

¶6      At the change of plea hearing, Walker's counsel requested that the court reserve until sentencing taking Walker's plea on the driving without proof of insurance charge to allow counsel to verify whether Walker did indeed have insurance. The court agreed and accepted Walker's guilty plea on the felony DUI charge. The court also ordered that both parties file briefs with the court prior to sentencing regarding Walker's challenge to her prior DUI convictions. In her brief, Walker argued that her 1999 DUI convictions were infirm because she was not told that she had the "absolute and guaranteed" right to an attorney and the right to compel the attendance of witnesses on her behalf; she was not told of the effect of any penalty enhancement provision; and she was not told that her right to a jury trial included having an impartial jury from the community as well as a unanimous verdict, and that she had a right to participate in jury selection.

3

¶7 On February 6, 2006, prior to sentencing, the court held a hearing on Walker's arguments that four of her prior DUI convictions were invalid and, thus, could not be used to elevate her current DUI charge to a felony. In addition, the State moved to dismiss the driving without insurance charge as Walker had provided proof of insurance. The court determined that Walker's 1985 and 1992 convictions would not be considered for purposes of enhancing her sentence. The court also determined that Walker's 1999 DUI convictions were valid and, since she had not challenged her 2003 DUI conviction, the current charge was her fourth DUI and, thus, was a felony pursuant to § 61-8-731, MCA.

¶8 Walker appeals the District Court's judgment.

**Standard of Review**

¶9 The grant or denial of a motion to dismiss in a criminal proceeding is a question of law which we review de novo to determine whether the district court's conclusion of law is correct. *State v. Weaver*, 2008 MT 86, ¶ 9, 342 Mont. 196, ¶ 9, 179 P.3d 534, ¶ 9 (citing *State v. Luckett*, 2007 MT 47, ¶ 6, 336 Mont. 140, ¶ 6, 152 P.3d 1279, ¶ 6). As to a district court's factual findings concerning the circumstances surrounding a defendant's prior convictions, we review those findings under the clearly erroneous standard. *Weaver*, ¶ 9 (citing *State v. Burt*, 2000 MT 115, ¶ 6, 299 Mont. 412, ¶ 6, 3 P.3d 597, ¶ 6). A trial court's findings are clearly erroneous if they are not supported by substantial evidence, if the court has misapprehended the effect of that evidence, or if a review of the record leaves this Court with a definite and firm conviction that a mistake has been made.

4

*Weaver*, ¶ 9 (citing *State v. Lewis*, 2007 MT 295, ¶ 17, 340 Mont. 10, ¶ 17, 171 P.3d 731, ¶ 17; *State v. Warclub*, 2005 MT 149, ¶ 23, 327 Mont. 352, ¶ 23, 114 P.3d 254, ¶ 23).

**Discussion**

¶10    *Whether Walker's waivers of her right to counsel and her right to trial at the time of her 1999 DUI convictions were made knowingly, intelligently and voluntarily.*

¶11    In Walker's effort to strike the two 1999 DUI convictions, she filed an affidavit in the District Court stating that she was not advised that a fourth or subsequent DUI could result in a felony; that if she chose to go to a jury trial, the verdict would have to be unanimous; that she could compel witnesses to testify on her behalf by way of subpoena; and that if she could not afford a lawyer, one would be appointed to represent her.  She further stated in her affidavit that she pled guilty to both of the 1999 DUI charges without the benefit of a lawyer and that she was sentenced to jail for both offenses.

¶12    It is well settled in Montana that the State may not use a constitutionally infirm conviction to support an enhanced punishment such as the felony DUI in the case before us on appeal.  *Weaver,* ¶ 11 (citing *State v. Okland*, 283 Mont. 10, 15, 941 P.2d 431, 434 (1997)).  Moreover, a rebuttable presumption of regularity attaches to prior criminal convictions during a collateral attack and a defendant who challenges the validity of that prior conviction during a collateral attack has the burden of producing direct evidence of its invalidity.  *Weaver*, ¶ 11.  In other words, a prior conviction is presumed to be valid absent evidence to the contrary.  *State v. Mann*, 2006 MT 33, ¶ 15, 331 Mont. 137, ¶ 15, 130 P.3d 164, ¶ 15.  Once the defendant has made such a showing, the burden then shifts to the State to produce direct evidence and to prove by a preponderance of the evidence

5

that the prior conviction was not entered in violation of the defendant's rights. *Weaver*, ¶ 11 (citing *Okland*, 283 Mont. at 18, 941 P.2d at 436).

¶13 As stated above, a rebuttable presumption of regularity attached to Walker's 1999 DUI convictions which Walker had to overcome by direct evidence. To that end, Walker submitted an affidavit in which she averred that she was not advised that an attorney would be appointed to represent her if she could not afford one; that if she chose to go to a jury trial, the verdict would have to be unanimous; that she could compel witnesses to testify on her behalf by way of subpoena; and that a fourth or subsequent charge of DUI would be a felony charge.

¶14 This Court has recognized that a defendant's unequivocal and sworn statement that the defendant did not waive the right to counsel constitutes direct evidence which rebuts the presumption of regularity. *State v Howard*, 2002 MT 276, ¶ 13, 312 Mont. 359, ¶ 13, 59 P.3d 1075, ¶ 13 (citing *State v. Couture*, 1998 MT 137, ¶ 15, 289 Mont. 215, ¶ 15, 959 P.2d 948, ¶ 15). Here, Walker's unequivocal and sworn statements in her affidavit are direct evidence demonstrating that her guilty pleas may have been obtained in violation of her constitutional rights and therefore "irregular." Consequently, Walker met her burden.

¶15 The burden then shifted to the State to produce direct evidence and to prove by a preponderance of the evidence that Walker's prior convictions were not entered in violation of Walker's rights. To that end, the State produced the records from Harlem City Court relating to both of Walker's 1999 DUI convictions. We now examine this

6

evidence produced by the State to determine whether the State met its burden in proving that Walker's 1999 DUI convictions were valid.

### 1. right to counsel

¶16 The right to the assistance of counsel is a fundamental right guaranteed by the Sixth Amendment to the United States Constitution, and Article II, Section 24 of the Montana Constitution. *Okland*, 283 Mont. at 14, 941 P.2d at 433 (citing *Gideon v. Wainwright*, 372 U.S. 335, 342-44, 83 S. Ct. 792, 795-97 (1963); *State v. Craig*, 274 Mont. 140, 148, 906 P.2d 683, 688 (1995), *cert. denied*, 517 U.S. 1195, 116 S. Ct. 1689 (1996); *see also State v. Langford*, 267 Mont. 95, 99, 882 P.2d 490, 492 (1994), *cert. denied*, 513 U.S. 1163, 115 S. Ct. 1128 (1995)). Indigent defendants are entitled to legal representation by court-appointed counsel at public expense. *Okland*, 283 Mont. at 14, 941 P.2d at 433 (citing *State v. Enright*, 233 Mont. 225, 228, 758 P.2d 779, 781 (1988), *overruled in part and on other grounds by State v. Gallagher*, 2001 MT 39, 304 Mont. 215, 19 P.3d 817 (2001)).

¶17 However, the fundamental right to counsel in misdemeanor cases extends only to those cases in which a sentence of imprisonment is actually imposed and does not extend to defendants who waive that right. *Okland*, 283 Mont. at 14, 941 P.2d at 433 (citing *Scott v. Illinois*, 440 U.S. 367, 373-74, 99 S. Ct. 1158, 1162 (1979); *State v. Hansen*, 273 Mont. 321, 325, 903 P.2d 194, 197 (1995), *overruled in part by Alabama v. Shelton*, 535 U.S. 654, 122 S. Ct. 1764 (2002); *Craig*, 274 Mont. at 152, 906 P.2d at 690).

¶18 Furthermore, courts indulge in every reasonable presumption against waiver of fundamental constitutional rights and will not indulge in any presumption of waiver. *State v. Mann*, 2006 MT 33, ¶ 13, 331 Mont. 137, ¶ 13, 130 P.3d 164, ¶ 13. Thus, for a waiver to be effective, a defendant must waive a known right knowingly, intelligently and voluntarily. *Mann*, ¶ 14.

¶19 In this case, Walker contends that she did not knowingly, intelligently and voluntarily waive her right to counsel prior to entering her guilty pleas to the 1999 DUI charges because she was advised at that time that counsel *may* be appointed to represent her if she could not afford counsel, not that counsel *would* be appointed to represent her. She maintains that a defendant must be advised that the right to counsel is absolute.

¶20 In support of her contention that her waiver of her right to counsel was not made knowingly, intelligently and voluntarily, Walker relies on this Court's decision in *Mann* wherein we held that the defendant in that case did not enter into a knowing, intelligent or voluntary waiver of his right to counsel when he signed the arraignment forms that were provided for him. However, we came to that conclusion in *Mann*, not because of the defendant's interpretation of one simple word as in the case *sub judice*, but because the right to counsel provision contained in the arraignment forms signed by the defendant in *Mann* were "erroneous, intimidating and virtually indecipherable." *Mann*, ¶ 24. These arraignment forms advised Mann

> [t]hat I have a right to have legal counsel represent me, but since no provision is made for payment of legal counsel in the lower court, I would be required to pay for such counsel, unless I fill out such form claiming indigency, that I would be sworn as to the truthfulness of statements, this

form would then be turned over to the County Attorney who would have an investigation made, *if statements were found to be false I could be tried for perjury*. If found true, the Judge *may or may not appoint legal counsel to represent me* at the State's expense.

*Mann*, ¶ 6 (emphasis added). We held in *Mann* that the language in this form was confusing and intimidating in that it threatened additional prosecution for perjury. *Mann*, ¶ 24. We also determined that the final sentence in this paragraph of the form was an incorrect statement of the law because it articulated that even after Mann filled out indigence forms and underwent a criminal investigation regarding his truthfulness as to indigence, the court could still choose not to appoint counsel to represent him. *Mann*, ¶ 24.

¶21 In the instant case, the State produced the Harlem City Court records for Walker's September 27, 1999, and January 6, 1999 DUI convictions to show that Walker was properly advised of her right to an attorney. Unlike the forms in *Mann*, the Initial Appearance/Arraignment documents that Walker signed after she was charged with each offense of DUI in 1999 stated: "You have the right to have an attorney represent you. If you cannot afford your own attorney, one may be appointed to represent you, in accordance with MCA 46-8-101." In these same documents, Walker indicated that she understood her rights, that she did not desire an attorney and that she would represent herself.

¶22 Walker also signed a "Waiver of Rights" and a "Waiver of Counsel" prior to both of her 1999 DUI convictions wherein she acknowledged that she fully understood that she had the right to have an attorney. In the Waiver of Counsel, Walker acknowledged

9

that she had been advised of her right to counsel and that she understood that she had "[t]he right to have an attorney and consult with an attorney before entering a plea. If I have no funds to hire an attorney, and I QUALIFY, and [sic] attorney may be appointed."

¶23 While Walker finds fault with the phrase "may be appointed," in these documents, the Initial Appearance/Arraignment documents actually stated, "may be appointed to represent you, *in accordance with MCA 46-8-101* [emphasis added]." In 1999, when Walker entered her guilty pleas, this statute provided:

> **Right to counsel.** (1) During the initial appearance before the court, every defendant must be informed of the right to have counsel, and must be asked if the aid of counsel is desired.
> (2) If the defendant desires counsel, is unable to employ counsel, and is entitled to have counsel assigned, the court shall assign counsel to the defendant without unnecessary delay.
> (3) The defendant, if unable to employ counsel, *is entitled to have counsel assigned if*:
> *(a) the offense charged is a felony;*
> *(b) the offense charged is a misdemeanor and the court desires to retain imprisonment as a sentencing option; or*
> *(c) the interests of justice would be served by assignment.*

Section 46-8-101, MCA (1997) (emphasis added).

¶24 Thus, contrary to Walker's assertions that the use of the qualifying phrase "*may* be appointed," did not advise her adequately of her absolute right to counsel, the reference to § 46-8-101, MCA (1997), is clear. Under that statute, a defendant's right to have counsel assigned is qualified, not only by a determination of indigence, but by the following three criteria: 1) whether the offense charged is a felony; 2) whether the offense charged is a misdemeanor and the court desires to retain imprisonment as a sentencing option; and 3) whether the interests of justice would be served by assignment. Consequently,

10

because Walker had to meet one of these three criteria in order to have counsel assigned, the court was not in error in using the qualifying language that counsel "may be appointed" to represent her as it had yet to determine whether Walker qualified for counsel under the terms of § 46-8-101, MCA (1997).

*2. right to compel the attendance of witnesses*

¶25 The Initial Appearance/Arraignment documents Walker signed prior to her guilty pleas to the 1999 DUI charges stated: "At the trial you have the right . . . to call witnesses to testify for you . . . ." Similarly, the Waiver of Rights documents asked Walker to acknowledge that she fully understood that "[a]t the trial, I have the right . . . to call witnesses to testify for me." And, the Waiver of Counsel documents asked Walker to indicate that she had been advised of and understood that she had: "The right to call witnesses to testify before me."

¶26 Walker contends that she did not knowingly, intelligently and voluntarily waive her right to trial when she signed these documents because she was only advised that she had the right to "call" witnesses to testify on her behalf, not that she had the right to "compel" witnesses to testify. She maintains that "[b]eing told that one can call witnesses to testify, and being told that one can compel or force witnesses to testify through the power of the court are two (2) different things." Walker provides no authority in support of her contention.

¶27 Contrary to Walker's assertions, the plain meaning of the term "to call" includes "to ask or order to come," *The Collins English Dictionary* 224 (Patrick Hanks ed., 2d ed.

11

Collins 1990), and "[t]o summon," *Black's Law Dictionary* 196 (Bryan A. Garner ed., 7th ed. West 1999). Consequently, we conclude that it was sufficient for the court to advise Walker that she had the right to *call* witnesses to testify in her behalf.

¶28 Moreover, the Montana Constitution does not provide that a defendant has the right to compel witnesses to *testify*. Instead, it provides that "[i]n all criminal prosecutions the accused shall have the right to . . . compel *the attendance* of witnesses in his behalf . . . ." Mont. Const. art. II, § 24 (emphasis added). Thus, while under Montana's Constitution an accused can compel a witness in their behalf to *attend* a proceeding, the Constitution does not state that the accused can compel them to *testify*.

### 3. right to trial by jury

¶29 Walker contends that she could not have validly waived her right to a jury trial if she was not told what the right to a jury trial included. Walker maintains that she was not told that the verdict in a jury trial must be unanimous, that the jurors must be from the community where the alleged crime was committed, that the jurors must be impartial, and that the accused has a say in the jurors selected.

¶30 Article II, Section 26 of the Montana Constitution provides in relevant part: "The right of trial by jury is secured to all and shall remain inviolate. . . . In all criminal actions, the verdict shall be unanimous." Moreover, Article II, Section 24 of the Montana Constitution provides in relevant part: "In all criminal prosecutions the accused shall have the right to . . . a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed . . . ."

12

¶31 The Initial Appearance/Arraignment documents Walker signed prior to her guilty pleas to the 1999 DUI charges stated: "You have the right to have a trial by jury or a trial by Judge. . . . You have the right to . . . have the charge(s) against you to be proven beyond a reasonable doubt." Similarly, the Waiver of Rights documents asked Walker to acknowledge that she fully understood that she had "the right to be tried by a jury, or by a judge" and that "[a]t the trial, I have the right . . . to have my guilt proven beyond a reasonable doubt." And, the Waiver of Counsel documents asked Walker to indicate that she had been advised of and understood that she had: "The right to a jury trial or a trial by judge" and the "right to have the pending charge proven beyond a reasonable doubt . . . ."

¶32 Walker asserts that these statements were insufficient to advise her of her various trial rights. In support of her contention, she quotes the following language from *United States v. Cochran*, 770 F.2d 850, 853 (9th Cir. 1985):

> Like the Sixth Circuit, we expect that adoption of a supervisory rule will be unnecessary and that district court [sic] will in the future follow the course we are once again urging. Like the Sixth Circuit we "implore" district courts to inform defendants that (1) twelve members of the community compose a jury; (2) the defendant may take part in jury selection; (3) jury verdicts must be unanimous; and (4) the court alone decides guilt or innocence if the defendant waives a jury trial. When district courts provide this information on the record, they help insure that defendants understand the basic mechanics of a jury trial before deciding whether to waive that right. By asking appropriate questions the district court will also be better able to perform its task of determining whether a proposed waiver is in fact being offered voluntarily, knowingly and intelligently. [Internal citation and footnote omitted.]

¶33 As the State points out in its brief on appeal, while the Ninth Circuit Court of Appeals went to great lengths in *Cochran* to implore courts to conduct a colloquy with

defendants to be sure they understand a jury waiver, the court underscored that no constitutional or statutory provision requires such a colloquy. *Cochran*, 770 F.2d at 851 ("the failure of a district judge to conduct such an interrogation does not violate either the Constitution . . . or Fed. R. Crim. P. 23(a); nor does it *ipso facto* require reversal.").

¶34 Walker was advised that she had the right to a jury trial and the right to have her guilt proven beyond a reasonable doubt. We conclude that, beyond that, requiring the court to explain all of the nuances or effects of waiving the right to a jury trial is unnecessary.

### 4. penalty enhancement provisions

¶35 Section 46-12-210(1)(a)(iii), MCA, requires that before accepting a plea of guilty, the trial court shall determine that the defendant understands "the maximum penalty provided by law, *including the effect of any penalty enhancement provision . . .* [emphasis added]." Walker argues, in effect, that this statute requires that the enhanced penalty for a fourth or greater DUI must be made known to a defendant prior to obtaining that defendant's guilty plea on a third or lesser DUI.

¶36 We disagree. Contrary to Walker's interpretation, § 46-12-210(1)(a)(iii), MCA, requires trial courts to advise defendants of what might happen as a result of a plea of guilty to the specific charge at issue and not to some future crime. As the State points out in its brief on appeal, there is no requirement under Montana law that a sentencing judge must advise a defendant specifically regarding a crime the defendant may commit in the future. Indeed, committing a future felony is clearly an indirect consequence over which

14

Walker had complete control.

¶37 In *State v. Liefert*, 2002 MT 48, ¶ 21, 309 Mont. 19, ¶ 21, 43 P.3d 329, ¶ 21, *cert. denied*, 537 U.S. 892, 123 S. Ct. 160 (2002), we held that because it is impossible for a judge to inform a defendant of every possible consequence of a guilty plea, a judge is only required to inform a defendant of the *direct*, rather than the collateral, consequences of a guilty plea. We stated in *Liefert* that a "consequence is direct if it has a 'definite, immediate, and largely automatic effect' on the defendant." *Liefert*, ¶ 22 (quoting *United States v. Bouthot*, 878 F.2d 1506, 1511 (1st Cir. 1989)). Conversely, a consequence is indirect or collateral if it is not under the control of the sentencing judge or it is a procedure under the control of a different sovereign or agency. *Liefert*, ¶ 22 (citing *United States v. Long*, 852 F.2d 975, 979 (7th Cir. 1988)). A consequence is also indirect or collateral if the defendant has control over whether or not the consequence occurs. *Liefert*, ¶ 22 (citing *Torrey v. Estelle*, 842 F.2d 234, 236 (9th Cir. 1988)).

¶38 In the instant case, Walker was advised in the Initial Appearance/Arraignment documents that she signed prior to both of her 1999 DUI convictions that "[t]here may be indirect consequences of this plea, which may include loss of driving privileges; and the use of this conviction against you if you are convicted of a crime in the future." However, the trial court was not required to advise her that a fourth or subsequent DUI might result in a felony charge. Whether Walker committed a fourth or subsequent DUI requiring that she receive the enhanced penalty was clearly within her sole control and was, thus, an indirect consequence of her guilty pleas to the 1999 DUI offenses.

**Conclusion**

¶39   The State presented sufficient evidence in the District Court to support the conclusion that Walker's 1999 DUI convictions were not entered in violation of her constitutional rights.  As shown above, Walker was properly advised of her right to counsel, her right to compel the attendance of witnesses on her behalf, and her right to a jury trial.  In addition, the District Court was not required to advise her of the indirect consequences of her guilty pleas.  On that basis, we conclude that Walker's guilty pleas to the 1999 DUI charges were entered knowingly, intelligently and voluntarily.  We hold, therefore, that the District Court correctly ruled that Walker's 1999 DUI convictions could be used to elevate her current DUI charge to a felony, and that the District Court did not err in denying Walker's motion to dismiss.

¶40   Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE