

DA 10-0329

IN THE SUPREME COURT OF THE STATE OF MONTANA

2011 MT 90

STATE OF MONTANA,

        Plaintiff and Appellee,

  v.

GREGORY ALAN MAINE,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Sixteenth Judicial District,
In and For the County of Rosebud, Cause No. DC 2009-21
Honorable Joe L. Hegel, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

            Joslyn Hunt, Chief Appellate Defender, Matthew M. Wilcox, Assistant
            Appellate Defender, Helena, Montana

        For Appellee:

            Steve Bullock, Montana Attorney General, Micheal S. Wellenstein,
            Assistant Attorney General, Helena, Montana

            Michael B. Hayworth, Rosebud County Attorney, Forsyth, Montana

Submitted on Briefs:  March 29, 2011

Decided:  May 2, 2011

Filed:

_____

Clerk

Justice James C. Nelson delivered the Opinion of the Court.

¶1 The State of Montana charged Gregory Alan Maine in the Sixteenth Judicial District Court, Rosebud County, with driving under the influence of alcohol (DUI). Section 61-8-401(1)(a), MCA. Because Maine had three prior DUI convictions, the State charged the present offense as Maine's fourth DUI, a felony. *See* § 61-8-731, MCA. Maine filed a motion seeking to invalidate one of the prior convictions and thus reduce the present offense to his third DUI, a misdemeanor. The District Court denied the motion. Maine then pleaded guilty pursuant to a plea agreement, reserving his right to appeal the denial of his motion.

¶2 The sole issue on appeal is whether the District Court erred in denying Maine's Motion to Reduce Charge to Misdemeanor. We affirm.

## BACKGROUND

¶3 The events underlying the present DUI occurred the evening of July 27, 2009. Sergeant Spencer Anderson of the Rosebud County Sheriff's Office came upon a car parked on the left-hand side of Greenleaf Road facing the wrong direction. The vehicle had one occupant, Maine, who was asleep behind the wheel. Anderson woke Maine, who explained that he had been sleeping because he was tired. Maine stated that he had parked on the wrong side of the road because there was more room on that side, though Anderson noted that there was no more room on the left side of the gravel roadway than there was on the right side. Maine insisted that he was on his way to Kinsey, which is located northeast of Miles City in Custer County, when in fact he was 60 miles southwest of Miles City in Rosebud County. Anderson smelled a strong odor of an alcoholic

beverage coming from Maine and noted that his eyes were bloodshot and glassy. Based on these observations and the results of several sobriety tests, Anderson transported Maine to the Sheriff's Office in Forsyth and booked him into jail.

¶4 Through a records check, the Rosebud County Attorney ascertained that Maine had three prior DUI convictions: 1991 in Oregon, 1994 in Rosebud County, and 1997 in Rosebud County. Hence, the prosecutor charged Maine with DUI, fourth or subsequent offense, a felony. As noted, Maine filed a Motion to Reduce Charge to Misdemeanor. He asserted that the 1997 conviction was invalid and therefore could not be used as the basis for charging a felony. The parties briefed this issue and the District Court held a hearing at which Maine, a law enforcement officer, and a former detention officer testified, and four exhibits were introduced, all relating to the 1997 conviction. The circumstances of that conviction, as described by Maine, are as follows.

¶5 At around noon on July 28, 1996, Maine attended a rodeo in Ingomar, Montana. Upon arriving, he drank a couple of beers at the beer garden. While there, he noticed a former employer, Rodney Newman. Maine testified that "Mr. Newman said hello and I said hello, and I was looking at him. And he says, 'I've been meaning to talk to you,' and I said, 'Yeah, I've been meaning to talk to you too.' And I asked him if he was having an affair with my wife and that's when he swung at me." According to Maine, five of Newman's friends held Maine down while Newman beat Maine to the point of unconsciousness. When Maine regained consciousness, he walked over to a horse trough to wash his face. He then noticed his assailants walking toward him. Maine testified that he felt threatened and believed that he had no safe place to go in Ingomar, which did not

3

have a police station. Thus, he went to his pickup and headed down Highway 12 toward Forsyth, roughly 40 miles away.

¶6 Meanwhile, two Rosebud County deputies were responding to the report of an altercation in Ingomar involving Maine, who reportedly was "drunk and challenging to fight." En route, one of the deputies recognized Maine's pickup traveling the opposite direction. They turned around, intending to follow him and observe his driving behavior for a short distance, but Maine immediately pulled over on his own initiative. At this point, he had driven about 20 miles from Ingomar. Maine told the deputies that several persons had held him down while Rodney Newman beat him. Maine had visible cuts and abrasions on his head and body, but none of them appeared life-threatening. He admitted that he had drunk 12 beers the night before in Roundup and a couple of beers that day in Ingomar. Based on this admission, the dispatch report, the odor of an alcoholic beverage emanating from his person, and the results of field sobriety tests, the deputies placed Maine under arrest for DUI and transported him to the detention center in Forsyth.

¶7 Maine was appointed counsel, and his case ultimately proceeded to a bench trial in Rosebud County Justice Court, at the conclusion of which he was found guilty. The court fined Maine $300 and sentenced him to 60 days in jail, with 53 days suspended. He received credit for time served (1 day), leaving 6 days which the court told him he could serve on consecutive weekends. Maine did not appeal the conviction to District Court for a trial de novo, nor did he pursue any postconviction review.

¶8 Maine's defense to the 1996 DUI charge was that he had not been under the influence of alcohol while driving. According to Maine, his attorney never raised or

4

discussed with him the possibility of a compulsion defense. *See* § 45-2-212, MCA; *State v. Leprowse*, 2009 MT 387, 353 Mont. 312, 221 P.3d 648 (a defendant may assert the affirmative defense of compulsion to a charge of DUI). Yet, given his reasons for fleeing Ingomar in his pickup, Maine argued that a compulsion defense "obviously" should have been raised. Thus, he asserted that he had received ineffective assistance of counsel and that his 1997 conviction was constitutionally infirm as a result. In response, the prosecutor argued that Maine had not overcome the presumption that the conviction is valid. For one thing, he argued, Maine had not established that his decision to drive away from Ingomar met the six elements of compulsion. *See Leprowse*, ¶ 12. Moreover, he argued that trial counsel's failure to raise a compulsion defense may have been the product of sound trial strategy and that Maine had not shown otherwise.

¶9 In its order denying Maine's motion, the District Court observed that

> [i]t is impossible for the Court to adequately sort out the claims and counterclaims regarding the viability of a compulsion defense at a trial conducted more than 12 years ago without the testimony of the participants, except for Mr. Maine, and without the testimony of trial counsel as to whether he considered the compulsion defense and, if so, why he did not present it at trial. All the Court has is Mr. Maine's recollections of what was or was not discussed. The Court does not have [trial counsel's] recollections. Nor does the Court have the testimony of the other participants in, or witnesses to, the Ingomar altercation. All the Court can say is that the compulsion defense should have been considered and may have been sufficient to inject reasonable doubt in the mind of the trier of fact. The Court cannot say that it would necessarily have provided a complete defense as claimed by the Defense.

¶10 The District Court concluded that Maine's "allegation of ineffective counsel based on not raising an affirmative defense as to which questions of fact remain . . . does not render the conviction 'constitutionally infirm' for purposes of determining the

5

enhancement of punishment of later offenses." The court reasoned that there is a need for finality and that the "mere possibility" of a different outcome in the original trial is insufficient to invalidate the conviction. In this regard, the court noted that the present situation—which would require a "20-20 hindsight" inquiry into the viability of a defense that was never raised—is distinguishable from a situation in which the alleged error is "so fundamental that it taints the entire proceeding" and the resulting conviction is thus constitutionally infirm "on its face."

¶11    The District Court sentenced Maine, in accordance with the plea agreement, to the Department of Corrections for 13 months, followed by a 3-year suspended prison sentence. Maine now appeals.

## STANDARD OF REVIEW

¶12    Whether a prior conviction may be used for sentence enhancement is generally a question of law, for which our review is de novo. *State v. Hansen*, 273 Mont. 321, 323, 903 P.2d 194, 195 (1995); *State v. Weaver*, 2008 MT 86, ¶ 10, 342 Mont. 196, 179 P.3d 534. However, in determining whether a prior conviction is invalid, the court may first need to make findings of fact, based on oral and documentary evidence presented by the parties, regarding the circumstances of that conviction. *See e.g. Weaver*, ¶ 9; *State v. Peterson*, 2002 MT 65, ¶¶ 3-5, 309 Mont. 199, 44 P.3d 499. We will not disturb such findings unless they are clearly erroneous. *Weaver*, ¶ 9; *Peterson*, ¶ 7.

## DISCUSSION

¶13    In *State v. Okland*, 283 Mont. 10, 941 P.2d 431 (1997), we set forth the procedural framework for determining whether a prior conviction may be used to enhance

6

punishment on a current charge: (1) a rebuttable presumption of regularity attaches to the prior conviction, (2) the defendant has the initial burden to produce direct evidence that the prior conviction is invalid, and (3) once the defendant has made this showing, the burden shifts to the State to produce direct evidence and prove by a preponderance of the evidence that the prior conviction was not entered in violation of the defendant's rights. *Id.* at 18, 941 P.2d at 436. This framework has been cited in numerous cases.[1]

¶14 Maine notes that this Court "has not provided a bright line rule for determining when evidence is sufficient to rebut the presumption of regularity" but instead seems to make this determination "on a case-by-case basis." Maine observes that we have found a defendant's affidavit outlining the alleged constitutional violation to be sufficient to shift the burden to the State—citing *Jenni* and *Olson* (*see* ¶ 13 n. 1, *supra*) as examples. He further observes that in *Okland*, we found the defendant's affidavit, plus the trial record

---

[1] *See State v. Jenni*, 283 Mont. 21, 25, 938 P.2d 1318, 1320 (1997); *State v. Olson*, 283 Mont. 27, 31, 938 P.2d 1321, 1324 (1997); *State v. Perry*, 283 Mont. 34, 37, 938 P.2d 1325, 1327 (1997); *State v. Stubblefield*, 283 Mont. 292, 297, 940 P.2d 444, 447 (1997); *State v. Big Hair*, 1998 MT 61, ¶ 16, 288 Mont. 135, 955 P.2d 1352; *State v. LaPier*, 1998 MT 174, ¶ 11, 289 Mont. 392, 961 P.2d 1274; *State v. Ailport*, 1998 MT 315, ¶ 7, 292 Mont. 172, 970 P.2d 1044; *State v. Brown*, 1999 MT 143, ¶ 5, 295 Mont. 5, 982 P.2d 1030; *State v. Moga*, 1999 MT 283, ¶ 11, 297 Mont. 1, 989 P.2d 856; *State v. Anderson*, 2001 MT 188, ¶ 20, 306 Mont. 243, 32 P.3d 750; *Peterson*, ¶ 6; *State v. Jackson*, 2002 MT 212, ¶ 9, 311 Mont. 281, 54 P.3d 990; *State v. Howard*, 2002 MT 276, ¶ 10, 312 Mont. 359, 59 P.3d 1075; *State v. Kvislen*, 2003 MT 27, ¶ 10, 314 Mont. 176, 64 P.3d 1006; *State v. Weldele*, 2003 MT 117, ¶ 16, 315 Mont. 452, 69 P.3d 1162; *State v. Keenan*, 2003 MT 190, ¶ 8, 316 Mont. 493, 74 P.3d 1037; *State v. Snell*, 2004 MT 334, ¶ 25, 324 Mont. 173, 103 P.3d 503; *State v. Mann*, 2006 MT 33, ¶ 15, 331 Mont. 137, 130 P.3d 164; *State v. Smerker*, 2006 MT 117, ¶ 36, 332 Mont. 221, 136 P.3d 543; *Weaver*, ¶ 18; *State v. Kampf*, 2008 MT 198, ¶ 12, 344 Mont. 69, 186 P.3d 223; *State v. Walker*, 2008 MT 244, ¶ 12, 344 Mont. 477, 188 P.3d 1069; *State v. Faber*, 2008 MT 368, ¶ 18, 346 Mont. 449, 197 P.3d 941; *State v. Allen*, 2009 MT 124, ¶ 13, 350 Mont. 204, 206 P.3d 951.

from his prior conviction which corroborated his affidavit, sufficient to shift the burden to the State.

¶15 Here, Maine supported his Motion to Reduce Charge to Misdemeanor with his signed affidavit and with testimony and exhibits adduced at the evidentiary hearing. He asserts that this evidence "conclusively show[s]" that he acted out of compulsion when he fled Ingomar in his pickup. He notes the District Court's statement that "the compulsion defense should have been considered and may have been sufficient to inject reasonable doubt in the mind of the trier of fact." Maine goes further, though, and contends that compulsion would have been "a complete defense" to the 1996 DUI charge. Yet, he observes, his trial counsel did not raise this defense. He maintains that (1) counsel had "no plausible justification" for failing to raise the defense and (2) there is a "reasonable probability" that the result of his trial would have been different had counsel raised it. *See State v. Ankeny*, 2010 MT 224, ¶ 52, 358 Mont. 32, 243 P.3d 391 (to prevail on a claim of ineffective assistance, the defendant must show that (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that the result of the proceeding would have been different but for counsel's errors); *accord Strickland v. Washington*, 466 U.S. 668, 687-96, 104 S. Ct. 2052, 2064-69 (1984). Maine claims there is "no doubt" that the burden was shifted to the State under *Okland*, and he then proceeds to argue that the State did not meet its burden.

¶16 In response, the State requests as a threshold matter that we limit the grounds on which a defendant may challenge a prior conviction offered by the prosecution to support an enhanced punishment. The State proposes that "[a] defendant may only attack the

8

constitutionality of a prior conviction later used to enhance a subsequent sentence or charge on the grounds that the defendant was denied his right to assistance of appointed counsel in violation of *Gideon v. Wainwright*, 372 U.S. 335[, 83 S. Ct. 792] (1963)" (emphasis omitted). Thus, the State would have us hold that neither the District Court nor this Court can even entertain Maine's objection to the use of his 1997 conviction, let alone consider whether his evidence is sufficient to rebut the presumption of regularity. In other words, even if a defendant can show that a prior conviction is constitutionally infirm, the State's position is that the invalid conviction may nevertheless be used for enhancement purposes—unless it was obtained in violation of *Gideon*.

¶17 This is not the first time the State has asked us to adopt this rule, which derives from a trio of Supreme Court cases: *Custis v. United States*, 511 U.S. 485, 114 S. Ct. 1732 (1994), *Daniels v. United States*, 532 U.S. 374, 121 S. Ct. 1578 (2001), and *Lackawanna County Dist. Atty. v. Coss*, 532 U.S. 394, 121 S. Ct. 1567 (2001). *See Weaver*, ¶¶ 11-13.[2] Although we declined to consider the State's proposal in *Weaver*, we conclude that it is necessary in the present case to clarify the procedure on these sorts of collateral attacks on prior convictions. As explained below, the rule of *Custis*, *Daniels*, and *Lackawanna* is less protective of a defendant's due process rights than established Montana law. Thus, we decline to adopt the categorical prohibition of the Supreme Court's trilogy of cases. Nevertheless, given the State's interest in the finality of convictions, which are difficult to defend against collateral attacks many years after the

---

[2] The State also argued for application of the rule in *Bingman v. State*, 2005 MT 272, 329 Mont. 151, 122 P.3d 1235. *See* Br. of Respt. at 18-21, *Bingman v. State*, No. 04-146 (June 4, 2004).

fact, we modify our existing standard such that the defendant has a heavy burden to establish, with affirmative evidence, that the prior conviction is constitutionally infirm.

**Federal Jurisprudence**

¶18    Before discussing the details of *Custis*, *Daniels*, and *Lackawanna*, it is useful to note two earlier Supreme Court decisions which bear on this discussion. First, in *Burgett v. Texas*, 389 U.S. 109, 88 S. Ct. 258 (1967), the defendant's prior forgery conviction in Tennessee was introduced during his assault trial in Texas state court. He objected on the ground that the forgery conviction was obtained in violation of his right to counsel. The trial court overruled the objection, and he was convicted. *Id.* at 110-13, 88 S. Ct. at 259-61. On appeal, the Supreme Court reversed. The Court stated that the Constitution places limitations on state criminal procedures, such as requiring the exclusion of coerced confessions and the exclusion of illegally seized evidence. *Id.* at 113-14, 88 S. Ct. at 261. Another is the requirement that the accused be provided counsel as guaranteed by the Sixth and Fourteenth Amendments. The Court then reasoned that

> [t]o permit a conviction obtained in violation of *Gideon v. Wainwright* to be used against a person either to support guilt or enhance punishment for another offense is to erode the principle of that case. Worse yet, since the defect in the prior conviction was denial of the right to counsel, the accused in effect suffers anew from the deprivation of that Sixth Amendment right.

*Id.* at 115, 88 S. Ct. at 262 (citation omitted). The Court concluded that the admission of Burgett's prior, constitutionally infirm conviction was inherently prejudicial and, thus, not harmless. *Id.*

¶19    Second, in *United States v. Tucker*, 404 U.S. 443, 92 S. Ct. 589 (1972), the defendant's prior state-court convictions (two from Florida and one from Louisiana) were

10

introduced during his jury trial in federal district court and were considered by the trial judge at sentencing. Several years later, a California state court conclusively determined that the Louisiana conviction and one of Florida convictions were constitutionally invalid because Tucker's right to counsel had been violated in the underlying proceedings. Tucker then filed a motion in the federal district court challenging the earlier use at trial of the now-invalidated convictions. The district court held that the error was harmless, and the Court of Appeals for the Ninth Circuit affirmed as to the guilt phase of Tucker's trial. But the Ninth Circuit found that the defective prior convictions may have led the district court to impose a heavier prison sentence than it otherwise would have. Thus, the appellate court remanded the case for resentencing. *Id.* at 443-46, 92 S. Ct. at 590-91. The government appealed, and the Supreme Court affirmed. The Court noted that the sentence imposed by the district court had been "founded at least in part upon misinformation of constitutional magnitude," and the Court rejected the government's contention that this error was harmless. *Id.* at 447-49, 92 S. Ct. at 591-92.

¶20    *Custis*, *Daniels*, and *Lackawanna* likewise involved challenges to prior state-court convictions used to enhance the defendants' current sentences. In *Custis*, the challenge arose in a federal sentencing proceeding. Custis was convicted of two federal offenses, and the government moved to have his sentence enhanced under the Armed Career Criminal Act of 1984 (ACCA) based on three prior state-court convictions.[3] Custis challenged the use of two of those convictions on the grounds that he had received

_____

[3] The ACCA provides an enhanced sentence for a felon who unlawfully possesses a firearm in violation of 18 U.S.C. § 922(g) and has three previous convictions by any court for a violent felony or a serious drug offense. *See* 18 U.S.C. § 924(e).

11

ineffective assistance of counsel and had not been adequately advised of his rights. *Custis*, 511 U.S. at 487-88, 114 S. Ct. at 1734.

¶21 The Supreme Court determined, however, that unlike other federal statutes which permit repeat offenders to challenge prior convictions used for enhancement purposes, Congress had not authorized such challenges under the ACCA. *Id.* at 490-93, 114 S. Ct. at 1735-37. The Court held that, absent statutory authorization, a defendant may not attack a prior conviction in the course of a federal sentencing proceeding. *Id.* at 490-97, 114 S. Ct. at 1735-39. The Court cited two policy concerns in support of this holding: ease of administration (related to the difficulties in obtaining state-court transcripts and records) and promoting the finality of judgments. *Id.* at 496-97, 114 S. Ct. at 1738-39. The Court acknowledged its holdings in *Burgett* and *Tucker*, but limited those decisions to *Gideon* claims. Thus, the Court recognized only one exception to the bar on collateral attacks: if the prior conviction is alleged to have been obtained in violation of the right to appointed counsel. *Id.* at 493-96, 114 S. Ct. at 1737-38. The Court stated that such violations are "unique" and rise to the level of a "jurisdictional defect." *Id.* at 496, 114 S. Ct. at 1738. Moreover, they are generally easy to verify from the record. *Id.* As a final matter, the Court noted that Custis still had other means of attacking the prior convictions in question, and if he were successful he could then apply to reopen any federal sentence enhanced by those convictions. *Id.* at 497, 114 S. Ct. at 1739.

¶22 Justice Souter, joined by Justice Blackmun and Justice Stevens, dissented. Among other things, Justice Souter disputed the Court's narrow reading of *Burgett* and *Tucker*. He observed that these two decisions had long been thought to stand for the broader

12

proposition that " '[n]o consideration can be given [at sentencing] to a conviction that was unconstitutionally obtained.' " *Custis*, 511 U.S. at 500, 114 S. Ct. at 1740 (brackets in original) (quoting Charles Alan Wright, *Federal Practice and Procedure* vol. 3, § 526, 102 (1982)). And he noted that federal courts of appeals had consistently read *Burgett* and *Tucker* as requiring courts to entertain claims that prior convictions (relied on for enhancement) were unconstitutional for reasons other than *Gideon* violations—such as confrontation, self-incrimination, and ineffective assistance of counsel violations. *Id.* (citing cases). Justice Souter acknowledged that *Burgett* and *Tucker* dealt directly with claimed violations of *Gideon,* but he argued that the principles and reasoning set forth in those cases applied equally to claimed violations of other constitutional rights. *Id.* at 505-06, 114 S. Ct. at 1743-44. In this regard, he questioned the soundness of treating right-to-appointed-counsel claims differently than right-to-effective-assistance-of-counsel claims. He pointed out that

> [t]he Sixth Amendment guarantees no mere formality of appointment, but the "assistance" of counsel, cf. *Strickland, supra,* at 685, 686, 104 S.Ct., at 2063 ("That a person who happens to be a lawyer is present at trial alongside the accused . . . is not enough to satisfy the [Sixth Amendment]" because " 'the right to counsel is the right to the effective assistance of counsel' "), and whether the violation is of *Gideon* or *Strickland,* the defendant has been denied that constitutional right.

*Id.* at 507, 114 S. Ct. at 1744 (brackets and ellipsis in original). Finally, Justice Souter criticized the notion of "jurisdictional" and "nonjurisdictional" rights. He pointed out the misuse of the term "jurisdiction," as well as the difficulty of devising a standard to tell whether a flaw in the proceedings leading to a conviction counts as a "jurisdictional defect." He suggested that the denial of effective counsel under *Strickland* is no less a

"jurisdictional defect" than the denial of appointed counsel under *Gideon*. *Id.* at 508-10, 114 S. Ct. at 1744-45.

¶23    *Daniels* and *Lackawanna* involved the application of *Custis* to postsentencing challenges brought under 28 U.S.C. §§ 2255 and 2254, respectively.  In *Daniels*, a federal prisoner filed a § 2255 motion to vacate, set aside, or correct his federal sentence, alleging that the prior state convictions used for enhancement were unconstitutional. In *Lackawanna*, a state prisoner filed a § 2254 petition for a writ of habeas corpus, alleging that the prior state conviction used to enhance his state sentence was unconstitutional.  In both cases, the sentences for the prior convictions had been fully served by the time of sentencing on the new offenses.  Both prisoners asserted ineffective assistance of counsel claims, and Daniels also claimed that his guilty pleas were not knowing and voluntary. *Daniels*, 532 U.S. at 376-77, 379, 121 S. Ct. at 1580-81, 1582; *Lackawanna*, 532 U.S. at 397-99, 121 S. Ct. at 1570-72.

¶24    The Supreme Court concluded, however, that the policy concerns cited in *Custis* vis-à-vis federal sentencing proceedings (administration and finality) applied equally to § 2255 and § 2254 proceedings.  In addition, the Court noted that a defendant has other opportunities to challenge the constitutionality of a state-court conviction: direct appeal, state postconviction review, or federal postconviction review.  *Daniels*, 532 U.S. at 379-81, 121 S. Ct. at 1581-83; *Lackawanna*, 532 U.S. at 402-03, 121 S. Ct. at 1573-74. Accordingly, the Court held that once a state conviction is no longer open to direct or collateral attack in its own right (because the defendant failed to pursue those remedies while they were available or because the defendant did so unsuccessfully), the conviction

14

may be regarded as conclusively valid; and if that conviction is later used to enhance a criminal sentence, the defendant may not challenge the enhanced sentence under § 2255 or § 2254, except on the ground that the right to counsel under *Gideon* was violated. *Daniels*, 532 U.S. at 382, 121 S. Ct. at 1583; *Lackawanna*, 532 U.S. at 403-04, 121 S. Ct. at 1574. Also, a plurality opined that a § 2255 motion or a § 2254 petition challenging an enhanced sentence may, in "rare circumstances," be the first and only forum available for review of the prior conviction, in which case a federal court might properly entertain the challenge on grounds other than *Gideon*. *Daniels*, 532 U.S. at 376, 383-84, 121 S. Ct. at 1580, 1584; *Lackawanna*, 532 U.S. at 396, 405-06, 121 S. Ct. at 1570, 1574-75.

¶25    Justice Souter, joined by Justice Stevens and Justice Ginsburg, dissented in both cases. Justice Souter argued that while defendants are not allowed under *Custis* to raise collateral challenges during federal sentencing proceedings, they should be allowed to raise them through § 2255 or § 2254. *Daniels*, 532 U.S. at 387-91, 121 S. Ct. at 1586-88; *Lackawanna*, 532 U.S. at 408-10, 121 S. Ct. at 1576-77. He noted that "[a] defendant under the ACCA has generally paid whatever penalty the old conviction entailed; he may well have forgone direct challenge because the penalty was not practically worth challenging, and may well have passed up collateral attack because he had no counsel to speak for him." *Daniels*, 532 U.S. at 391, 121 S. Ct. at 1588. But when faced with a sentence enhancement, "the old conviction is suddenly well worth challenging and counsel may be available." *Id.*

¶26    Justice Breyer also dissented. In *Daniels*, he argued that *Custis* should be overruled, noting that the review of collateral challenges need not prove unusually

burdensome given the appropriate burden of proof rules. 532 U.S. at 392-93, 121 S. Ct. at 1588-89. And in *Lackawanna*, he argued that the case should be remanded for consideration of the "rare circumstances" exception by the lower courts in the first instance. 532 U.S. at 410, 121 S. Ct. at 1577.

## Montana Law

¶27 As noted, the State proposes that we adopt the *Custis* rule in Montana. That rule holds that prior convictions used for enhancement may not be challenged in federal court under any constitutional theory except a *Gideon* violation. *Custis*, 511 U.S. at 496, 114 S. Ct. at 1738. The allowance for *Gideon* claims is the minimum protection afforded by the *Custis* rule. We have long recognized, however, that Montana law may be more protective of individual rights than the floor established by federal law. *See State v. Johnson*, 221 Mont. 503, 512-14, 719 P.2d 1248, 1254-55 (1986); *Buckman v. Montana Deaconess Hosp.*, 224 Mont. 318, 324, 730 P.2d 380, 384 (1986); *State v. Clark*, 1998 MT 221, ¶ 20, 290 Mont. 479, 964 P.2d 766; *Walker v. State*, 2003 MT 134, ¶ 73, 316 Mont. 103, 68 P.3d 872. Thus, the State's proposal must be considered within the context of Montana law. We are not required to adopt or defer to the Supreme Court's approach in *Custis*, *Daniels*, and *Lackawanna*.[4]

---

[4] *See also State v. Weber*, 90 P.3d 314, 319 (Idaho 2004) (while "Weber had no right under the United States Constitution to collaterally attack the validity of his prior misdemeanor DUI convictions because his attack was based on grounds other than the denial of counsel," "this Court would be free to interpret provisions of the Idaho Constitution to provide greater protection than their corresponding provisions of the United States Constitution"); *Paschall v. State*, 8 P.3d 851, 852 n. 2 (Nev. 2000) ("[W]e decline this opportunity to adopt such a strict rule limiting collateral attacks and note that we are not bound by the *Custis* decision as it involved a federal sentencing law not at

16

¶28 The Due Process Clause of Article II, Section 17 of the Montana Constitution protects a defendant from being sentenced based upon misinformation. *State v. Phillips*, 2007 MT 117, ¶ 17, 337 Mont. 248, 159 P.3d 1078. A constitutionally infirm prior conviction used for enhancement purposes constitutes "misinformation of constitutional magnitude." *Tucker*, 404 U.S. at 447, 92 S. Ct. at 592. Thus, "[i]n Montana, it is well established that the State may not use a constitutionally infirm conviction to support an enhanced punishment." *Okland*, 283 Mont. at 15, 941 P.2d at 434 (citing *Lewis v. State*, 153 Mont. 460, 463, 457 P.2d 765, 766 (1969)).

¶29 On the other hand, it is also well established that most constitutional rights are not absolute. Indeed, our standards for reviewing constitutional claims recognize that such rights may be burdened if the government's interest is sufficiently weighty. *See e.g. State v. Guill*, 2011 MT 32, ¶¶ 67-70, 359 Mont. 225, 248 P.3d 826; *State v. Merrill*, 2008 MT 143, ¶ 12, 343 Mont. 130, 183 P.3d 56; *State v. Johnson*, 1998 MT 107, ¶ 23, 288 Mont. 513, 958 P.2d 1182; *State v. Nelson*, 283 Mont. 231, 243, 941 P.2d 441, 449 (1997). In the present context, the State has an interest in deterring habitual offenders as well as an interest in the finality of convictions, which are difficult to defend against collateral attacks (like the one here) many years after the fact. A defendant's due process right not to be sentenced based upon misinformation (in the form of a constitutionally infirm prior conviction) must be balanced against these competing interests of the State.

---

issue here and merely established the floor for federal constitutional purposes as to when collateral attacks of prior convictions may be prohibited."); *accord People v. Soto*, 54 Cal. Rptr. 2d 593, 597-98 (Cal. App. 2d Dist. 1996); *State v. Boskind*, 807 A.2d 358, 362 (Vt. 2002).

¶30 As an initial observation, we decline to adopt the Supreme Court's "jurisdictional" approach in *Custis*. For one thing, doing so would undermine our recent efforts to clarify the meaning of "jurisdiction." *See e.g. State v. Garrymore*, 2006 MT 245, ¶ 10 n. 1, 334 Mont. 1, 145 P.3d 946; *Miller v. Eighteenth Jud. Dist. Court*, 2007 MT 149, ¶¶ 42-44, 337 Mont. 488, 162 P.3d 121; *Ballas v. Missoula City Bd. of Adjustment*, 2007 MT 299, ¶¶ 15-16, 340 Mont. 56, 172 P.3d 1232. Moreover, the *Custis* Court did not articulate a standard, let alone a workable one, for distinguishing between constitutional rights that are "jurisdictional" and those that are "nonjurisdictional," or for determining whether a flaw in the proceedings underlying a conviction rises to a "jurisdictional defect."

¶31 We also decline to adopt an approach that limits collateral challenges based on the particular constitutional right being asserted—for example, allowing *Gideon* claims but disallowing *Strickland* claims. As for this particular example, the right to appointed counsel is meaningless if the appointed counsel provides ineffective assistance; and, in this respect, it makes little sense to allow claims that counsel was not appointed but to disallow claims that appointed counsel was ineffective. But more to the point, all of the rights contained in Article II are fundamental rights, *Walker*, ¶ 74, and we disagree with the premise that some of these rights are sufficiently "unique" to merit consideration in collateral challenges, while others are not so deserving. Picking and choosing among constitutional rights under a "uniqueness" standard is another arbitrary and unworkable approach.

¶32 When a prior conviction offered for enhancement purposes is challenged, the difficulties in evaluating the defendant's claim (as illustrated in the present case) are the

18

result not necessarily of the particular constitutional theory raised, but rather of the adequacy of the record. Granted, the adequacy of the record will generally correspond with the underlying theory. Yet, while most *Gideon* violations may be ascertainable from the face of the record, that will not always be the case; and while most *Strickland* violations may not be resolvable without trial transcripts and a full-blown evidentiary hearing, some may be apparent from the paper record. This may be true, as well, of other constitutional claims, such as a violation of the privilege against self-incrimination or a guilty plea that was not knowing and intelligent. Hence, the existence of administrative burdens in evaluating collateral challenges does not justify limiting the particular rights which may be asserted. Rather, it justifies requiring the defendant seeking to avoid enhancement to provide a sufficient record on which to resolve the particular claim, or suffer denial of the claim due to failure of proof.

¶33 In light of the foregoing, we conclude that the appropriate balance is struck as follows. First, we adhere to the principle that, in Montana, "the State may not use a constitutionally infirm conviction to support an enhanced punishment." *Okland*, 283 Mont. at 15, 941 P.2d at 434. Second, we see no reason to abandon the general approach set forth in *Okland*. Thus, we will continue to apply this framework for evaluating collateral challenges to prior convictions: (1) a rebuttable presumption of regularity attaches to the prior conviction, and we presume that the convicting court complied with the law in all respects; (2) the defendant has the initial burden to demonstrate that the

19

prior conviction is constitutionally infirm; and (3) once the defendant has done so, the State has the burden to rebut the defendant's evidence.[5]

¶34    However, as the moving party, the ultimate burden of proof—which includes both the burden of production and the burden of persuasion[6]—shall be on *the defendant*, who must prove by a preponderance of the evidence that the conviction is *invalid*. The burden is not on *the State* to prove by a preponderance of the evidence that the conviction is *valid*, and this facet of the framework (*see Okland*, 283 Mont. at 18, 941 P.2d at 436, and the cases cited above in ¶ 13 n. 1) is accordingly modified to this extent. Furthermore, to meet his or her burden of proof, the defendant may not simply point to an ambiguous or silent record, but must come forward with affirmative evidence establishing that the prior conviction was obtained in violation of the Constitution. Self-serving statements by the defendant that his or her conviction is infirm are insufficient to overcome the presumption of regularity and bar the use of the conviction for enhancement. We note that this approach is consistent with that followed by the federal courts when reviewing such challenges. *See United States v. Reyes-Solano*, 543 F.3d 474, 478 (8th Cir. 2008); *United States v. Allen*, 153 F.3d 1037, 1041 (9th Cir. 1998); *United States v. Cruz-Alcala*, 338 F.3d 1194, 1197 (10th Cir. 2003); *see also Parke v. Raley*, 506 U.S. 20, 113 S. Ct. 517 (1992).

---

[5] The State's assertion that this approach "ignore[s]" the postconviction time bar in § 46-21-102, MCA, is incorrect, as the defendant does not seek "to vacate, set aside, or correct the sentence" imposed on the underlying charge, *see* § 46-21-101(1), MCA, but rather seeks to prevent his present sentence from being enhanced based on an allegedly infirm prior conviction.

[6] *See Black's Law Dictionary* 223 (Bryan A. Garner ed., 9th ed., Thomson Reuters 2009).

## Analysis of Maine's Claim

¶35     As noted, Maine claims that the 1997 conviction is constitutionally infirm because he was denied his right to effective assistance of counsel. Maine's theory is that his trial counsel was ineffective for not raising compulsion as a defense to the 1996 DUI charge. To prevail on this claim, Maine must establish that (1) counsel's performance fell below an objective standard of reasonableness and (2) a reasonable probability exists that the result of the trial would have been different but for counsel's errors. *Ankeny*, ¶ 52. He must satisfy both prongs of this test. *Ankeny*, ¶ 53.

¶36     In support of his motion, Maine submitted his affidavit summarizing the events of July 28, 1996, the investigative notes of the deputy who arrested him that day, copies of photographs taken of his face and upper body at the detention center following his arrest, and documents from the Justice Court record. At the evidentiary hearing, Maine called one witness: himself. He testified in greater detail about the events in Ingomar and his reasons for leaving. He also testified that his trial counsel did not raise or discuss a compulsion defense. The State then called two witnesses: the second deputy present when Maine was arrested and the detention officer at the jail in Forsyth, both of whom testified about their contact with Maine that day. They acknowledged that Maine had visible cuts and abrasions and that he had attributed those to an earlier fight. However, according to these witnesses, Maine never stated that he was rendered unconscious in the fight or that he was fleeing Ingomar for his own safety.

¶37     The evidence proffered by Maine is insufficient to sustain his ultimate burden. First, he has not demonstrated that his trial counsel's performance fell below an objective

21

standard of reasonableness. The record does not establish whether counsel simply did not know about the compulsion defense, knew about it but decided not to raise it, or did not raise it for some other reason. In other words, we do not know "why" counsel failed to take the action that Maine claims he should have taken—which is the very reason that we refuse to address a claim of ineffective assistance of counsel on direct appeal and instead allow the claim to be pursued in postconviction proceedings on the basis of a developed record. *See State v. Gunderson*, 2010 MT 166, ¶ 71, 357 Mont. 142, 237 P.3d 74.

¶38 Claims of ineffective assistance are difficult enough to establish on direct appeal or in postconviction proceedings, given the standards required to prove such claims. The defendant must overcome the strong presumption that the challenged action or inaction was based on sound trial strategy and show that counsel's conduct fell below an objective standard of reasonableness measured under prevailing professional norms and in light of the surrounding circumstances. *Whitlow v. State*, 2008 MT 140, ¶¶ 20-21, 343 Mont. 90, 183 P.3d 861. But these claims are even less likely to be established years after the fact. At that point, not only may the necessary witnesses be unavailable and the relevant evidence lost or degraded, but trial counsel will be hard-pressed to reconstruct the reasons why he or she took (or failed to take) a particular action 10, 15, or 20 years earlier. We agree with the District Court's observations in this regard that it is impossible

> to adequately sort out the claims and counterclaims regarding the viability of a compulsion defense at a trial conducted more than 12 years ago without the testimony of the participants, except for Mr. Maine, and without the testimony of trial counsel as to whether he considered the compulsion defense and, if so, why he did not present it at trial.

22

¶39 Maine relies on our cases that have found the first prong of *Strickland* to be met because there was "no plausible justification" for counsel's conduct. *See e.g. State v. Jefferson*, 2003 MT 90, ¶ 50, 315 Mont. 146, 69 P.3d 641; *State v. Kougl*, 2004 MT 243, ¶ 24, 323 Mont. 6, 97 P.3d 1095. We cannot conclude on the record before us, however, that counsel had no plausible justification for not raising a compulsion defense. Contrary to Maine's contention that counsel's alleged "[f]ailure to explore this option is inexplicable," there is no evidence that counsel failed to *explore* it. The only evidence is that counsel failed to *raise* it, and it is certainly possible that counsel *did* conduct an investigation and decided that the facts did not support such a defense.

¶40 In this regard, we cannot agree with Maine that his evidence "conclusively" shows that he acted out of compulsion when he fled Ingomar. A preponderance of the evidence establishes, at most, that he was involved in some sort of altercation and sustained cuts and abrasions. There is no evidence corroborating his version of what transpired in Ingomar, nor is there any evidence corroborating his claim that his alleged assailants threatened him with "the imminent infliction of death or serious bodily harm" after he regained consciousness. *See* § 45-2-212, MCA (1995).[7] Notably, there is evidence, however, that Maine was the one who was "drunk and challenging to fight" (according to the dispatch report received by the deputies). In addition, Maine admitted that the assault had ended by the time he fled Ingomar and that he did not know whether his assailants

---

[7] "A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or serious bodily harm if he reasonably believes that death or serious bodily harm will be inflicted upon him if he does not perform such conduct."

were following or chasing him. But, in any event, the point here is that Maine's evidence merely establishes, as the District Court stated, that the compulsion defense "should have been considered." Whether counsel in fact did consider it, and why counsel did not raise it, are not revealed on the record before us.

¶41 Likewise, even assuming, for the sake of argument, that counsel's performance was objectively unreasonable, Maine has not demonstrated a reasonable probability that, but for counsel's errors, the result of the trial would have been different. A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. *Ankeny*, ¶ 54; *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Again, we agree with the District Court that the compulsion defense "may have been sufficient to inject reasonable doubt in the mind of the trier of fact" but would not *necessarily* have provided a complete defense as claimed by Maine. Even if his version of events is taken as true, it was still up to the jury to decide whether he "reasonably" believed that death or serious bodily harm would be inflicted upon him if he did not drive 20 miles down Highway 12 while under the influence of alcohol. *See* § 45-2-212, MCA; *Leprowse*, ¶¶ 12, 14-15. We cannot say on the limited record before us that Maine's belief was "reasonable" as a matter of law.

¶42 In sum, Maine has not met his burden to prove by a preponderance of the evidence that his 1997 conviction is constitutionally infirm due to ineffective assistance of his trial counsel.

## CONCLUSION

¶43 The District Court did not err in denying Maine's Motion to Reduce Charge to Misdemeanor.

24

¶44    Affirmed.

/S/ JAMES C. NELSON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ PATRICIA COTTER
/S/ MICHAEL E WHEAT
/S/ BRIAN MORRIS

Justice Beth Baker, concurring.

¶45    I concur in the Court's opinion. This Court has held for more than forty years that a constitutionally infirm conviction may not be used to support enhanced punishment. *Lewis*, 153 Mont. at 463, 457 P.2d at 766. Since 1997, we have applied that rule to allow a defendant to collaterally attack a prior conviction by "present[ing] direct evidence in support of his claim that his constitutional rights were violated in a prior proceeding." *Okland*, 283 Mont. at 17, 941 P.2d at 436. While the strong interest in finality of judgments supports placing a limit on collateral attack of underlying convictions, there is no textual basis for a rule that allows such attack for the violation of one fundamental right but not for the violation of another, equally fundamental right. I therefore agree with the Court's decision to reject that artificial distinction in favor of a rule of convenience.

¶46    The legislature has enacted strict limitations on a convicted person's right to seek postconviction relief from a sentence imposed in violation of the constitution or laws of

this State or the constitution of the United States. Sections 46-21-101-105, MCA. The statutes expressly allow an additional one year within which to challenge a conviction upon the discovery of new evidence that would establish a defendant's actual innocence. Section 46-21-102(2), MCA; *Beach v. State*, 2009 MT 398, ¶¶ 21-22, 353 Mont. 411, 220 P.3d 667. We have consistently applied these limits in the interest of finality of judgments, preserving the integrity of the judicial process, and securing the orderly administration of justice. *See e.g. State v. Rosales*, 2000 MT 89, 299 Mont. 226, 999 P.2d 313; *Davis v. State*, 2008 MT 226, ¶¶ 23-26, 344 Mont. 300, 187 P.3d 654.

¶47 As the Court observes, however, the postconviction statutes apply only when the defendant seeks to vacate, set aside, or correct the underlying sentence or revocation order. Opinion, ¶ 33, n.5; Section 46-21-101, MCA. The decision whether to impose such procedural bars on challenges to the use of a prior conviction for sentence enhancement is within the province of the legislature. A statutory scheme governing collateral attacks that provides limits similar to those imposed by the postconviction statutes would better advance the administration of justice than would this Court's attempt to pick and choose between constitutional rights of equal stature.

/S/ BETH BAKER

Justice Jim Rice concurring in part and dissenting in part.

¶48 I concur in affirming the District Court but dissent from the Court's reasoning, particularly, the creation of the expansive right to challenge prior judgments. The

26

Court's decision authorizes collateral attacks upon prior convictions on virtually limitless grounds, substantially expanding our jurisprudence which permitted challenges based upon asserted violations of the right to counsel. Now, whenever a prior conviction is to serve as a sentencing enhancement, any challenge which asserts a constitutionally based defect in the prior conviction may be raised in the midst of the criminal matter.

¶49 The Court's approach conflicts with the jurisprudence of the U.S. Supreme Court and also is inconsistent with the jurisprudence of state courts who have considered this issue under the enhanced protections of their respective state constitutions. State courts have likewise recognized the unique purposes served by the right to counsel and have limited collateral challenges to violations of that right. For the reasons they have articulated, I would likewise hold.

¶50 A key principle is "'promoting the finality of judgments . . . .'" *See Camp v. State*, 221 S.W.3d 365, 369 (Ark. 2006) (quoting *Custis v. United States*, 511 U.S. 485, 497, 114 S. Ct. 1732, 1739 (1994)); *see also United States v. Addonizio*, 442 U.S. 178, 99 S. Ct. 2235 (1979). As the Supreme Court summarized in *Addonizio*:

> Inroads on the concept of finality tend to undermine confidence in the integrity of our procedures. Moreover, increased volume of judicial work associated with the processing of collateral attacks inevitably impairs and delays the orderly administration of justice. Because there is no limit on the time when a collateral attack may be made, evidentiary hearings are often inconclusive and retrials may be impossible if the attack is successful.

*Addonizio*, 442 U.S. at 184-85 n. 11, 99 S. Ct. at 2240 n. 11 (internal citation omitted). The Supreme Court has also observed that when a defendant collaterally challenges previous convictions, he is seeking to deprive them of "their normal force and effect in a

27

proceeding that had an independent purpose other than to overturn the prior judgments." *Parke v. Raley*, 506 U.S. 20, 30, 113 S. Ct. 517, 523 (1992). This requires instant proceedings to re-litigate old judgments in order to proceed.

¶51 Although the Court acknowledges the legitimate interest of finality, the decision nonetheless undermines finality by permitting a broad range of new collateral attacks upon prior judgments. The Court quotes Justice Souter's dissent in *Daniels* for the proposition that a defendant "'has generally paid whatever penalty the old conviction entailed; he may well have forgone direct challenge because the penalty was not practically worth challenging . . . .'" Opinion, ¶ 25 (quoting *Daniels v. United States*, 532 U.S. 374, 391, 121 S. Ct. 1578, 1588 (2001)). However, finality of a judgment should not be abandoned because a challenge may not have been convenient or sufficiently beneficial for the defendant to bring at the time. As stated by the Supreme Court of Michigan, "both the Michigan judiciary singularly, and the citizenry whose collective rights and protections it is obligated to protect, have a compelling interest in championing the finality of criminal judgments." *People v. Carpentier*, 521 N.W.2d 195, 199 (Mich. 1994). A defendant in Montana has the right of appeal, with the right to counsel, and the right to challenge a judgment in a post conviction proceeding within one year. Later, if new evidence is discovered, the defendant has the right to challenge the conviction within one year after discovering the evidence. Section 46-21-102(2), MCA. Facially illegal sentences may be challenged by habeas corpus. *Lott v. State*, 2006 MT 279, 334 Mont. 270, 150 P.3d 337. Convictions which remain despite these remedies should be deemed final, subject only to a challenge for violation of the right to counsel,

28

with its unique protections, discussed hereinafter. The Supreme Court of Idaho reasoned that a defendant "has several opportunities to challenge the validity of his or her conviction," including appeal, post conviction relief and challenge to an illegal sentence, and concluded, "[t]he Court rejects the invitation 'to create from whole cloth, a fourth mechanism for attacking the validity of a prior conviction, in essence a collateral proceeding in the middle of a criminal case at which the defendant could challenge the validity of any prior judgment . . . .'" *State v. Weber*, 90 P.3d 314, 320-21 (Idaho 2004) (citation omitted).

¶52 A second reason is administration of the judicial process. Addressing the federal court system, the Supreme Court in *Custis* noted that "determination of claims of ineffective assistance of counsel, and failure to assure that a guilty plea was voluntary, would require sentencing courts to rummage through frequently nonexistent or difficult to obtain" transcripts or records that may date "from another era." *Custis*, 511 U.S. at 496, 114 S. Ct. at 1738-39. Addressing collateral attacks upon previous convictions for driving while suspended, the Supreme Court of Kansas reasoned that "allowing a collateral attack on prior convictions on the basis of inadequate plea colloquies would force the sentencing court to look behind every conviction with practically no record to rely on." *State v. Delacruz*, 899 P.2d 1042, 1049 (Kan. 1995). While the Court attempts to mitigate these problems by placing the burden of proof upon the defendant, all cases involving a prior conviction will now potentially face a "trial within a trial," or, as the Supreme Court has stated, a challenge within "a proceeding that had an independent purpose other than to overturn the prior judgments." *Parke*, 506 U.S. at 30, 113 S. Ct. at

29

523. This will further burden judicial time and resources and require that trial courts hear challenges to prior judgments and assess them based upon stale evidence and faded memories of years long passed—if the memories are available at all. In *State v. Snell*, 2004 MT 334, ¶¶ 10-11, 13, 324 Mont. 173, 103 P.3d 503, the district court was faced with a challenge to a 14-year-old conviction where a key witness had died. While this may present a proof problem for the defendant, it also places a burden on courts to hear and decide such cases—"forc[ing them] to look behind every conviction with practically no record to rely on." *Delacruz*, 899 P.2d at 1049.

¶53 In this context, there is uniqueness to the function served by the right to counsel which courts have commonly recognized. Analyzing its jurisprudential history, the Supreme Court in *Custis* described a violation of the right to counsel as a "unique constitutional defect." *Custis*, 511 U.S. at 496, 114 S. Ct. at 1738. As the Supreme Court explained, the right's uniqueness derives from the fact that, without it, other constitutional rights could be jeopardized because of the accused's lack of understanding to assert them. *See Custis*, 511 U.S. at 494-96, 114 S. Ct. at 1737-38. This was the central thrust of the holding in *Gideon v. Wainwright*, 372 U.S. 335, 83 S. Ct. 792 (1963), and of the precedent upon which *Gideon* relied. *See Powell v. Alabama*, 287 U.S. 45, 68-69, 53 S. Ct. 55, 64 (1932) (other rights would be "of little avail if it did not comprehend the right to be heard by counsel"). Relying on the United States Supreme Court, the Supreme Court of North Dakota has explained that the right to counsel "is fundamental because it enables an accused to procure a fair trial" and that "the denial of the right to counsel impeaches 'the very integrity of the fact-finding process.'" *State v. Orr*, 375

30

N.W.2d 171, 177-78 (N.D. 1985) (quoting *Linkletter v. Walker*, 381 U.S. 618, 639, 85 S. Ct. 1731, 1743 (1965), *overruled in part*, *Griffith v. Ky.*, 479 U.S. 314, 107 S. Ct. 708 (1987)).

¶54 State supreme courts have offered similar reasoning in limiting collateral attacks under the enhanced constitutional protections of their state constitutions. Addressing the same issue we face today—collateral attacks upon prior DUI convictions—the Supreme Court of North Dakota rejected the challenge defendant had brought based, in part, upon an asserted insufficiency of the factual basis for his prior plea and adopted the federal rule, stating that "North Dakota's strong independent notion of right to counsel under the North Dakota Constitution is in no way eroded by our holding today." *State v. Mund*, 593 N.W.2d 760, 760-62 (N.D. 1999). The Supreme Court of Michigan, discussing a related issue, reasoned that "Michigan has recognized the unique import of a defendant's constitutional right to counsel. The exceptional nature of this constitutional protection counsels for similarly atypical protection." *Carpentier*, 521 N.W.2d at 199-200 (internal citations omitted).

¶55 In *State v. Weeks*, 681 A.2d 86 (N.H. 1996), the Supreme Court of New Hampshire considered the defendant's challenge to a prior misdemeanor stalking conviction on the ground that the stalking statute was unconstitutionally vague and overbroad. *Weeks*, 681 A.2d at 89. Recognizing that the defendant was barred from doing so under federal constitutional law, the court analyzed the question under state constitutional law. *Weeks*, 681 A.2d at 89-90. The court concluded that the right to counsel was a unique constitutional right and held that "the defendant has no right to

challenge prior convictions collaterally at the hearing revoking her suspended sentence except when the prior conviction was based on a denial of the right to appointed counsel . . . ." *Weeks*, 681 A.2d at 89.

¶56 The Supreme Court of Hawaii began its extensive analysis of the issue with the proposition that "[o]f course, the fact that the federal constitution recognizes only a limited right to collaterally attack prior convictions does not mean that similar limitations need be imposed under our state constitution." *State v. Veikoso*, 74 P.3d 575, 581 (Haw. 2003). Nonetheless, after surveying the authorities, it concluded "that a defendant may not collaterally attack prior counseled DUI convictions on the basis that they were obtained as the result of allegedly invalid guilty pleas" because such attacks must be limited to alleged violations of the right to counsel. *Veikoso*, 74 P.3d at 582. The Hawaii Court was persuaded by, among other cases, *State v. Hahn*, 618 N.W.2d 528 (Wis. 2000), wherein the Supreme Court of Wisconsin held that a trial court:

> may not determine the validity of a prior conviction during an enhanced sentence proceeding predicated on the prior conviction unless the offender alleges that a violation of the constitutional right to a lawyer occurred in the prior conviction. Instead, the offender may use whatever means available under state law to challenge the validity of a prior conviction on other grounds in a forum other than the enhanced sentence proceeding.

*Hahn*, 618 N.W.2d at 535.

¶57 That defendants should be required to challenge convictions under established statutory procedures designed for that purpose, such as post conviction relief, rather than during a subsequent proceeding, was discussed extensively by the Maryland Court of Appeals in the pre-*Custis* case of *Fairbanks v. State*, 629 A.2d 63 (Md. 1993). The

*Fairbanks* Court first observed that the "spectrum of [constitutional] challenges" to a prior conviction is "necessarily broad," including, "in addition to denial of right to counsel claims . . . denial of effective representation by counsel, denial of right to jury trial, coerced confession, double jeopardy, self incrimination, uninformed or involuntary guilty plea, lack of due process, and the like." *Fairbanks*, 629 A.2d at 64. The *Fairbanks* Court reasoned that "[a]llowing a defendant to mount any constitutionally based challenge to a predicate conviction at a recidivist (or other) sentencing proceeding would present significant procedural difficulties," but that requiring a defendant to "utilize established procedures offers significant benefits," such as the opportunity to properly plead and investigate the case, the opportunity to review the record and determine whether issues have been waived, and, "if the defendant is successful in having a conviction overturned, the trial judge may grant full relief by ordering a new trial." *Fairbanks*, 629 A.2d at 64-66 (footnotes omitted). This case states well my concerns about the expansiveness of the new remedy created by the Court today and the necessity of requiring defendants to challenge convictions in the forums designed for that purpose.

¶58    The Court sees no distinction between the right to counsel and other constitutional rights, reasoning that "all of the rights contained in Article II are fundamental rights" and, therefore, all collateral challenges must be permitted. Opinion, ¶ 31. However, there is no requirement that all constitutional rights must be uniformly applied in all cases. Rather, rights serve differing purposes and must be applied accordingly. As the Supreme Court of Minnesota reasoned in this context, "[a]lthough it may be undesirable to distinguish between the importance of constitutional rights, we note that there is a

33

substantial basis to do so where, as here, the issue is raised by a collateral challenge. In emphasizing the importance of the finality of judgments, we have distinguished between constitutional rights and have allowed collateral attacks only in 'unique cases.'" *State v. Schmidt*, 712 N.W. 2d 530, 538 n. 4 (Minn. 2006) (citations omitted).

¶59 The courts referenced herein have analyzed the issue and concluded that the right to counsel's uniqueness requires that a defendant be given the right to initiate "'a collateral proceeding in the middle of a criminal case'" only upon such a violation. *Weber*, 90 P.3d at 321 (citation omitted); *see also Vester v. Commonwealth*, 593 S.E.2d 551, 553 (Va. App. 2004) (holding that defendant was not entitled to collaterally attack the validity of his prior DUI convictions on the basis of ineffective assistance of counsel). Opening up criminal proceedings to the "spectrum" of any conceivable constitutional challenge is not constitutionally required and would present "significant . . . difficulties." *Fairbanks*, 629 A.2d at 64-65. These authorities convince me that affirming the District Court as a matter of law is well-supported and prudent. It is also consistent with our long-standing precedent.

/S/ JIM RICE