Justice Dirk Sandefur delivered the Opinion of the Court.
*105 ***104 ¶1 Lewis Eldon Huffine appeals the judgment of conviction of the Montana Sixth Judicial District Court, Park County on four counts of felony violation of a protective order. Huffine collaterally challenges the validity of the underlying 2006 protective order and further asserts that pretrial delay denied him a speedy trial in violation of the Sixth and Fourteenth Amendments of the United States Constitution and Article II, Section 24 of the Montana Constitution. We affirm in part, reverse in part, and remand for further proceedings.
¶2 Huffine presents the following issues for review:
1. Did the District Court err by failing to analyze Huffine's speedy trial claim?
2. Did the District Court err by denying Huffine's motion to dismiss in which he collaterally challenged the constitutional validity of the 2006 protective order?
FACTUAL AND PROCEDURAL BACKGROUND
¶3 In 2006, Toba Lord filed a petition in the Montana 18th Judicial District Court, Gallatin County, for a permanent order of protection against Huffine. The petition alleged that Huffine stalked Lord and her family and sent numerous unwanted communications causing her to fear for their safety. Huffine failed to appear at the show cause hearing on the petition on November 16, 2006, and the court granted the petition and issued a permanent protective order enjoining Huffine from having contact with Lord and her family. On December 22, 2006, Huffine timely appealed and challenged, inter alia , the validity of the protective order on the asserted ground that he did not receive notice of the November 2006 hearing upon which the District Court issued the order. He subsequently filed numerous rambling related pro se motions and petitions. On November 14, 2007, we dismissed the appeal on procedural grounds pursuant to M. R. App. P. 12(1)(f) (2007) due to failure to cite to relevant legal authorities and the pertinent portions of the District Court record upon which he asserted error.
¶4 In spring 2007, while his appeal was still pending, Huffine again sent numerous letters to Lord's address. In June 2007, the State charged him in the Montana Eighteenth Judicial District Court with ***105 one count of stalking and two counts of violating a protective order. At Huffine's request, the court appointed a public defender to represent him. After the State amended the charges to eight counts of violating a protective order in violation of § 45-5-626, MCA, the matter proceeded to jury trial on January 29, 2009. On the morning of trial, Huffine alleged that the District Court did not have jurisdiction over him, that the court was biased and prejudiced against him, that he had the right to represent himself, that the court unlawfully denied him the right to depose Lord and file legal documents in the case, and that the State failed to provide him with requisite discovery. Later that same day, the court allowed Huffine to leave the courtroom[1] and observe the trial via closed-circuit television from another room. On the second day of trial, Huffine returned to the courtroom but the court later excluded him after he ignored repeated warnings to be quiet and allow his counsel to represent him. Huffine did not challenge the validity of the 2006 protective order in the 2007 criminal proceeding. After the jury convicted him on all eight counts of violating a protective order, Huffine timely appealed, asserting only that his 2009 conviction was invalid on the ground *106 that the District Court denied him his constitutional rights to be personally present and represent himself at trial. In March 2010, we affirmed his 2009 conviction. State v. Huffine , 2010 MT 67N, 355 Mont. 550, 228 P.3d 452.
¶5 Between 2013 and 2015, in continued disregard of the 2006 protective order, Huffine sent four additional letters to Lord. On March 4, 2015, the State charged Huffine in Park County Justice Court with four counts of attempted violation of a protective order in violation of § 45-5-626, MCA. Upon dismissal in Justice Court, the State refiled the charges in District Court on March 19, 2015. After the District Court continued the original April 21st hearing date, Huffine appeared on June 9, 2015, for initial appearance and arraignment. Huffine subsequently filed hundreds of rambling pro se documents challenging the validity of the underlying 2006 protective order due to lack of notice and opportunity to be heard. Lacking pertinent legal citation, cogent legal analysis, and supporting evidentiary showing, Huffine's filings, liberally construed, are best characterized as motions to dismiss. At various hearings on April 21, June 9, July 14, and September 15, 2015, Huffine continued to orally assert that the underlying protective order was invalid, each time without evidentiary ***106 showing or request for an evidentiary hearing.
¶6 At a pretrial conference on September 15, 2015, in opposition to the State's August 2015 motion for a trial continuance, Huffine orally objected that the requested continuance would violate his constitutional right to a speedy trial. The District Court overruled the objection and granted the requested continuance on the asserted ground that the 200-day trigger for the constitutional speedy trial analysis had yet to elapse. The court set trial for November 19, 2015, 260 days after the State filed the original charges in Justice Court and 245 days after refiling in District Court.
¶7 At trial on November 19, 2015, upon consideration of Huffine's incessant, unsupported written and oral ramblings, the District Court denied his motions to dismiss on alternative grounds. The court first ruled that Huffine could not, in a subsequent criminal proceeding, collaterally challenge the validity of a protective order previously issued by another court of competent jurisdiction. Additionally, the court ruled that Huffine, in any event, failed to make a threshold evidentiary showing sufficient to support his repeated cursory assertions of procedural error in the 2006 proceeding. Inter alia , Huffine also reiterated his prior and continuing assertion that the November trial date violated his right to a speedy trial. The court advised Huffine to "[f]eel free to raise that in your appeal." The matter ultimately proceeded to trial following which the jury convicted Huffine of four counts of felony violation of a protective order.
¶8 Huffine timely appealed. On appeal, Huffine filed numerous pro se documents that may be liberally construed as motions to set aside the guilty verdicts based on the alleged invalidity of the underlying 2006 protective order. Huffine centrally asserts that the delay between the filing of the original Justice Court charges and subsequent District Court trial violated his constitutional rights to a speedy trial and that the underlying 2006 protective order was invalid ab initio due to lack of notice of the predicate hearing in violation of his federal and state constitutional due process rights.
STANDARD OF REVIEW
¶9 Whether the pertinent facts manifest a violation of the right to a speedy trial is ultimately a question of law. State v. Steigelman , 2013 MT 153, ¶ 10, 370 Mont. 352, 302 P.3d 396 (citing State v. Ariegwe , 2007 MT 204, ¶ 119, 338 Mont. 442, 167 P.3d 815 ). The standard of review for a district court's pertinent findings of fact is whether they are clearly erroneous, and we review the district court's conclusions of law de novo for correctness. Ariegwe , ¶ 119.
***107 DISCUSSION
¶10 1. Did the District Court err by failing to analyze Huffine's speedy trial claim?
¶11 The Sixth and Fourteenth Amendments to the United States Constitution and Article II, Section 24 of the Montana Constitution guarantee criminal defendants the right to a speedy trial. In addressing *107 constitutional speedy trial claims, we consider four factors: (1) the length of the delay; (2) the reasons for the delay; (3) the accused's responses to the delay; and (4) prejudice to the accused as a result of the delay. Ariegwe , ¶¶ 106-13. Under the first factor, a delay between accusation and trial in excess of 200 days is presumptively prejudicial and triggers careful consideration and balancing of the other three factors. Ariegwe , ¶¶ 62, 107, see also City of Billings v. Bruce , 1998 MT 186, ¶ 55, 290 Mont. 148, 965 P.2d 866. The speedy trial clock begins to run upon the filing date of a formal complaint, indictment, or information, or the date of arrest on the original charge, whichever occurs first. Ariegwe , ¶ 42, (citing State v. Larson , 191 Mont. 257, 261, 623 P.2d 954, 957-58 (1981) ); see also United States v. Marion , 404 U.S. 307, 320, 92 S.Ct. 455, 479, 30 L.Ed.2d 468 (1971).
¶12 While we are reluctant to hold a district court in error on a speedy trial claim not raised by a supported motion,[2] the State acquiesces and concedes on appeal that, in addition to not making pertinent findings on Huffine's speedy trial objection, the District Court overruled the objection on the basis of an erroneous calculation of pretrial delay (from the date of Huffine's arraignment), resulting in an erroneous ruling that the 200-day trigger for the speedy trial analysis had yet to elapse. Based on the State's concession, we hold that the District Court erroneously failed to address Huffine's speedy trial claim.[3]
***108 ¶13 2. Did the District Court err by denying Huffine's motion to dismiss in which he collaterally challenged the constitutional validity of the 2006 protective order?
¶14 Huffine asserts on appeal that the District Court erroneously denied his various motions to dismiss because the subject charges were based on an underlying protective order that was invalid ab initio due to lack of notice of hearing. The State asserts that res judicata bars Huffine from collaterally challenging the validity of the 2006 protective order because he already had the opportunity to litigate its validity twice before-first on direct appeal of the 2006 protective order and again on appeal of his 2009 criminal conviction.
¶15 The doctrine of res judicata, also known as claim preclusion, was originally and remains a common law rule of civil procedure. Restatement (Second) of Judgments § Scope Note (1982). Collateral estoppel, also known as "issue preclusion, is a form of res judicata." Rausch v. Hogan , 2001 MT 123, ¶ 15, 305 Mont. 382, 28 P.3d 460. The common purpose of res judicata and collateral estoppel is to reinforce the authoritativeness of the rule of law and the essential corollary of finality and repose that, "at some point arguable questions of right and wrong" must, "for practical purposes," come to an end. Restatement (Second) of Judgments § Scope Note. Accord Stanley L. & Carolyn M. Watkins Trust v. Lacosta , 2004 MT 144, ¶ 26, 321 Mont. 432, 92 P.3d 620 ; Kullick v. Skyline Homeowners Ass'n , 2003 MT 137, ¶ 17, 316 Mont. 146, 69 P.3d 225 ; Rausch, ¶ 14 ; Restatement (Second) of Judgments § 13, cmt. a. The doctrines strike an imperfect balance between, on one hand, the important public policy need for finality of judgments to provide stability and order under the rule of law regardless of procedural flaw and "the unavoidable possibility" of error and, on the other, the interests of justice in a particular case that a prior judgment "be subject to reexamination ... if the initial engagement of the merits was inadequate." Restatement (Second) of Judgments § Scope Note.
*108 ¶16 In contrast to res judicata, collateral estoppel bars relitigation of an issue of fact or law previously litigated in a prior proceeding by the same parties or their privies, whether under the same or a different legal claim. Rausch , ¶ 15 ; Lawlor v. Nat'l Screen Service Corp. , 349 U.S. 322, 326, 75 S.Ct. 865, 867, 99 L.Ed. 1122 (1955) ; Restatement (Second) of Judgments § 27 (1982). Collateral estoppel thus applies when: (1) both proceedings involved the same parties or their privies; (2) the same issue was at issue and conclusively decided on the merits in the prior litigation; (3) the prior proceeding afforded the party or privy against whom estoppel is asserted a full and fair opportunity to litigate the ***109 issue; and (4) the prior proceeding resulted in a final judgment. Baltrusch v. Baltrusch , 2006 MT 51, ¶¶ 16-18, 331 Mont. 281, 130 P.3d 1267 ; Kullick , ¶ 18 ; Restatement (Second) of Judgments § 27.[4] As a common law rule of civil procedure, and distinct from application in a criminal case to prove the essential elements of a charged offense, collateral estoppel has wide application on its elements in various contexts including, inter alia , application in various special proceedings related to criminal proceedings (e.g. direct appeal, postconviction proceedings, and habeas corpus review) to preclude relitigation of claims or issues previously addressed by this Court. See Kills on Top v. State , 279 Mont. 384, 399-401, 928 P.2d 182, 192-93 (1996) (barring postconviction review of various matters previously addressed on direct appeal); State v. Black , 245 Mont. 39, 44, 798 P.2d 530, 533 (1990) (barring reconsideration on direct appeal of ineffective assistance of counsel claims previously adjudicated on pre-appeal postconviction petition); State v. Perry , 232 Mont. 455, 462-65, 758 P.2d 268, 272-74 (1988) (barring habeas review of alleged failure to disclose exculpatory evidence within scope of similar allegation previously raised and disposed of on direct appeal), overruled on other grounds by State v. Clark , 2005 MT 330, ¶¶ 32-33, 330 Mont. 8, 125 P.3d 1099 ; State v. Smith , 220 Mont. 364, 372, 715 P.2d 1301, 1305-06 (1986) (barring relitigation on direct appeal of issue previously resolved on writ of supervisory control).[5] ***110 ¶17 Here, as asserted by the State, Huffine previously raised the same challenge *109 to the procedural validity of the subject protective order by direct appeal in 2006. However, the State was not a party to the 2006 civil protective order proceeding. The parties to the proceeding were Lord and Huffine. Moreover, we dismissed Huffine's 2006 appeal on purely procedural grounds pursuant to M. R. App. P. 12(1)(f) (2007). Thus, even if collateral estopped applied in this context, our dismissal of Huffine's 2006 appeal would not satisfy at least one of the four elements necessary to preclude a subsequent collateral attack on the constitutional validity of the 2006 protective order.
¶18 Our 2010 affirmation of Huffine's criminal conviction for violating the 2006 protective order is another matter. Huffine and the State were both parties to his 2009 criminal conviction and subsequent appeal. As affirmed on appeal, Huffine's conviction on eight counts of violating the 2006 protective order was a final judgment on the merits. Though Huffine did not challenge the validity of the underlying protective order in the 2009 criminal proceeding, collateral estoppel also precludes a party from raising "a new legal theory or factual assertion" in a subsequent action involving the same parties if the new issue relates to the same subject matter, is relevant to a related issue previously adjudicated in the prior action, and the party could have raised the issue in the prior litigation. Mont. Envtl. Info. Ctr. v. Mont. Dep't of Envtl. Quality , 2016 MT 9, ¶ 21, 382 Mont. 102, 365 P.3d 454 (emphasis added) (citing McDaniel v. State , 2009 MT 159, ¶ 33, 350 Mont. 422, 208 P.3d 817 ); Baltrusch , ¶ 25, (quoting Martelli v. Anaconda-Deer Lodge Cnty. , 258 Mont. 166, 169, 852 P.2d 579, 581 (1993) (collateral estoppel applies when the "issues are so intertwined that to decide the issue before it, the district court would have to ***111 rehear the precise issue previously decided") ); Haines Pipeline Const., Inc. v. Mont. Power Co. , 265 Mont. 282, 288-89, 876 P.2d 632, 636-37 (1994).
¶19 On direct appeal of Huffine's 2009 criminal conviction, the only issue he raised was whether the District Court violated his constitutional rights to be personally present and represent himself in the proceedings below. Nevertheless, the threshold validity of the 2006 protective order was directly and inextricably related to the central matter litigated before the District Court in that case, i.e. whether Huffine violated the order as alleged. If so inclined, and to the extent otherwise permissible as a matter of law, he could have challenged the validity of the 2006 protective order in 2009 as he did here in 2015 when again faced with criminal prosecution for violating the order. Thus, if applicable, collateral estoppel would bar Huffine from subsequently challenging the validity of the 2006 protective order in the context of his 2015 criminal case.
¶20 However, this case presents a fundamental question as to whether collateral estoppel, a common law rule of civil procedure, may apply in a subsequent criminal case to conclusively establish or preclude contest of an essential element of a charged offense. None of the civil cases cited by the State address or support its assertion that it does. While neither this Court nor the United States Supreme Court have addressed the issue, the majority of federal courts of appeal and state appellate courts that have considered it have held that the government may not use res judicata or collateral estoppel to establish or preclude contest of a fact that is an essential element of proof in a subsequent criminal prosecution. See Bies v. Bagley , 519 F.3d 324, 339-40 (6th Cir. 2008) (criminal defendant may assert collateral estoppel against government but government may not assert collateral estoppel against defendant), rev'd on other grounds by Bobby v. Bies , 556 U.S. 825, 836, 129 S.Ct. 2145, 2153, 173 L.Ed.2d 1173 (2009) ; United States v. Smith-Baltiher , 424 F.3d 913, 919-20 (9th Cir. 2005) (accepting concession that, contrary to in-circuit precedent, government cannot use collateral estoppel to establish or preclude defense dispute of an essential element of an offense to which government bears burden of proof); United States v. Arnett , 353 F.3d 765, 766 (9th Cir. 2003) (accepting concession that government "may not use collateral estoppel to establish, as a matter of law, an element of an offense or to conclusively rebut an affirmative defense on which the government bears the burden of proof beyond a reasonable doubt"); United States v. Gallardo-Mendez , 150 F.3d 1240, 1242-46 (10th Cir. 1998)
*110 (prior illegal reentry conviction and resulting deportation did not preclude relitigation of defendant's immigration ***112 status in subsequent prosecution requiring proof of illegal alienage-trial court erroneously instructed jury that prior conviction established defendant's illegal alienage without further requirement for proof); United States v. Pelullo , 14 F.3d 881, 890-96 (3rd Cir. 1994) (prior wire fraud conviction did not preclude relitigation of same offense as a predicate offense in a subsequent Racketeer Influenced and Corrupt Organization Act prosecution); United States v. Harnage , 976 F.2d 633, 634-36 (11th Cir. 1992) (barring use of collateral estoppel to prevent relitigation in subsequent criminal prosecution of motion to suppress evidence on same factual basis unsuccessfully asserted in a prior prosecution); Oregon v. Davis , 265 Or.App. 179, 335 P.3d 1266, 1270-75 (2014) (state use of collateral estoppel "to conclusively establish facts necessary for a conviction" infringes right to require state to affirmatively prove every element of the crime beyond a reasonable doubt thereby diminishing state's burden of proof and invading province of the jury); Maryland v. Allen , 423 Md. 208, 31 A.3d 476, 483-88 (2011) (noting that "overwhelming majority of federal and state courts that have addressed the question have held that collateral estoppel may not be used against a criminal defendant"); Tennessee v. Thompson , 285 S.W.3d 840, 849 (Tenn. 2009) (state may not use collateral estoppel "as an offensive weapon against" criminal defendant); Tennessee v. Scarbrough , 181 S.W.3d 650, 658-60 (Tenn. 2005) (barring state use of collateral estoppel to establish an essential element of a subsequent criminal offense but allowing state to present record of prior conviction as evidence subject to rebuttal); Gutierrez v. Superior Court , 24 Cal.App.4th 153, 29 Cal.Rptr.2d 376, 381-86 (1994) (barring state use of collateral estoppel to preclude proof of identity and intent based on prior conviction on related offense involving same facts); New Jersey v. Ingenito , 87 N.J. 204, 432 A.2d 912, 918-20 (1981) (holding that proof of prior conviction as an essential element of a subsequent offense based solely on introduction of prior record of conviction was "indistinguishable" from impermissible state use of collateral estoppel).[6] ***113 ¶21 In contrast, only one federal circuit court of appeals has contrarily held that collateral estoppel is available in a criminal case for offensive use by the government to conclusively establish or preclude contest of proof of an essential element of a charged offense in a subsequent criminal proceeding. See Hernandez-Uribe v. United States , 515 F.2d 20, 21-22 (8th Cir. 1975) (affirming government use of collateral estoppel to bar defendant in illegal entry prosecution from relitigating illegal alien status previously litigated in prior conviction on same offense). However, Hernandez-Uribe is of dubious precedential value given that the Eighth Circuit did not consider the constitutional implications of collateral estoppel on the proof of a criminal case, instead following the lead of a similarly deficient Ninth Circuit holding since effectively abandoned upon the noted government concessions in Arnett and Smith-Baltiher . See Hernandez-Uribe , 515 F.2d at 21-22 (citing Pena-Cabanillas v. United States , 394 F.2d 785 (9th Cir. 1968) ). See also *111 Smith-Baltiher , 424 F.3d at 919-20 ; Arnett , 353 F.3d at 766.
¶22 Under the Sixth and Fourteenth Amendments to the United States Constitution, a criminally accused has the right to a fair and impartial jury trial and to require the government to prove every essential element of a charged offense beyond a reasonable doubt. Alleyne v. United States , 570 U.S. 99, 104, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013) (citing United States v. Gaudin , 515 U.S. 506, 509-10, 115 S.Ct. 2310, 2313-14, 132 L.Ed.2d 444 (1995) ; In re Winship , 397 U.S. 358, 361-64, 90 S.Ct. 1068, 1071-73, 25 L.Ed.2d 368 (1970) ). Though otherwise compelling, the "wise public policy" and efficient judicial administration rationales underlying res judicata and collateral estoppel cannot outweigh a criminal defendant's constitutional trial rights. Pelullo , 14 F.3d at 891-93. The fundamental "liberty interest of a criminal defendant," as procedurally protected by the Sixth and Fourteenth Amendments, must necessarily trump those lesser policy considerations. Pelullo , 14 F.3d at 893. Accord Bies , 519 F.3d at 339-40 ; Gallardo-Mendez , 150 F.3d at 1244 ; Davis , 335 P.3d at 1270-75 ; Allen , 31 A.3d at 483-88 ; Thompson , 285 S.W.3d at 849 ;
***114 Scarbrough , 181 S.W.3d at 658-60 ; Gutierrez , 29 Cal.Rptr.2d at 382-86 ; Ingenito , 432 A.2d at 919-20. See also Kills on Top , 279 Mont. at 400, 928 P.2d at 192 (noting that "[c]onventional notions of finality of litigation have no place where life or liberty is at stake and infringement of constitutional rights is alleged" in applying interests of justice exception to application of collateral estoppel in subsequent civil review of issue raised in prior criminal appeal (quoting Sanders v. United States , 373 U.S. 1, 8, 83 S.Ct. 1068, 1073, 10 L.Ed.2d 148 (1963) ) ); Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found. , 402 U.S. 313, 329, 91 S.Ct. 1434, 1443, 28 L.Ed.2d 788 (1971) (res judicata and collateral estoppel are subject to due process limitations); Bernhard v. Bank of Am. Nat'l Trust & Sav. Ass'n , 19 Cal.2d 807, 122 P.2d 892, 894 (1942) (res judicata and collateral estoppel must "conform to the mandate of due process of law").[7] We concur and hold that res judicata, in the form of collateral estoppel, does not apply in a criminal case to conclusively establish, or preclude contest of, proof of an essential element of a charged offense.
¶23 By extension of State v. Maine , 2011 MT 90, ¶¶ 28, 34, 360 Mont. 182, 255 P.3d 64 (state "may not use a constitutionally infirm conviction" as the basis for a subsequent criminal conviction and punishment), and in recognition of Joyner v. State , 58 P.3d 331, ¶¶ 17-23 (Wyo. 2002) (similarly permitting challenge of a prior protective order as a predicate for a subsequent criminal prosecution), Huffine urges us to consider whether a criminal defendant charged with violating a prior protective order may similarly collaterally challenge or attack the constitutional validity of the underlying protective order ab initio . However, despite an exorbitant multitude of rambling, unsupported filings in the District Court, Huffine has yet to make a particularized evidentiary showing sufficient to demonstrate that the 2006 protective order was constitutionally invalid due to lack of notice of the petition or the subsequent evidentiary hearing from which the order derived. Upon our independent review of the record on appeal, we similarly find no basis upon which to suspect that the 2006 protective order at issue was constitutionally invalid. Thus, we need not consider whether, by extension of or analogy to our holding in ***115 Maine , a criminal defendant charged with violating a protective order may similarly collaterally challenge the validity of the order in a subsequent criminal proceeding.
CONCLUSION
¶24 We hold that the District Court did not erroneously deny Huffine's motion(s) to dismiss the 2015 charges at issue and similarly did not err by failing to grant a new trial or *112 otherwise set aside his verdict of conviction in this case. However, upon the State's concession, we hold that the District Court erroneously failed to address Huffine's speedy trial claim.
¶25 Affirmed in part, reversed in part, and remanded for consideration of Huffine's speedy trial claim and entry of a corresponding judgment.
We concur:
LAURIE McKINNON, J.
JAMES JEREMIAH SHEA, J.
BETH BAKER, J.
JIM RICE, J.

Huffine asked for permission to leave the courtroom upon his assertion that the judge was not qualified to preside over the case.

See Section 46-13-101(4), MCA (except as otherwise provided by the court, "all pretrial motions must be in writing and must be supported by a statement of the relevant facts upon which the motion is being made. ... [t]he motion must state with particularity the grounds for the motion and the order or relief sought"). See also e.g. State v. Cybulski , 2009 MT 70, ¶ 31, 349 Mont. 429, 204 P.3d 7 ("bald assertions" of speedy trial violation do not satisfy § 46-13-101(4), MCA, and holding that district court did not err in denying speedy trial motion based on such).

This limited holding is not an express or implied holding that an unsupported cursory objection suffices to raise or preserve a speedy trial objection.

For purposes of res judicata and collateral estoppel, a party to the prior proceeding "is one who [was] 'directly interested in the subject matter, and had a right to make defense, or to control the proceeding, and to appeal from the judgment.' " Bernhard v. Bank of Am. Nat'l Trust & Sav. Ass'n , 19 Cal.2d 807, 122 P.2d 892, 894 (1942). "A privy is one who, after rendition of the judgment, has acquired an interest in the subject matter affected by the judgment through or under one of the parties." Bernhard , 122 P.2d at 894. However, some courts have recognized that the original common law requirement for mutuality of parties or privies has evolved to require only that the party asserted to be estopped have been a party or privy to the prior judgment. Bernhard , 122 P.2d at 894-95 ; Denturist Ass'n of Mont. v. State , 2016 MT 119, ¶¶ 11-12, 383 Mont. 391, 372 P.3d 466. Accord Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found. , 402 U.S. 313, 321-27, 91 S.Ct. 1434, 1439-42, 28 L.Ed.2d 788 (1971) (citing Bernhard ). Collateral estoppel similarly requires a lesser degree of finality than res judicata as long as the issue was conclusively decided between the interested parties in the prior litigation. See Baltrusch , ¶¶ 15, 20-24.

However, as a narrow exception where res judicata or collateral estoppel might otherwise lie, we reserve discretion to review otherwise precluded claims and issues where the interests of justice demand due to extraordinary circumstances, such as where manifest error implicates a fundamental constitutional right. State v. Southwick , 2007 MT 257, ¶ 16, 339 Mont. 281, 169 P.3d 698 (allowing relitigation (on subsequent appeal of a sentence revocation) of an illegal sentence claim previously litigated on habeas petition); Kills on Top , 279 Mont. at 399-401, 928 P.2d at 191-93 (in conjunction with reversal on independent grounds on postconviction review, allowing reconsideration of previously-considered constitutional death penalty challenge in interests of justice); State v. Zimmerman , 175 Mont. 179, 184-86, 573 P.2d 174, 177-78 (1977) (in conjunction with reversal on independent grounds on direct appeal, allowing reconsideration of an issue previously addressed on supervisory control). Note further that, though the inherent procedural and substantive differences between criminal and civil proceedings (e.g. distinct discovery rules, rules of evidence, burdens of proof, or substantive law) may often preclude its application as a practical matter, collateral estoppel may also technically apply on its elements to preclude relitigation in a subsequent civil proceeding of an issue previously litigated in, or essential to, a prior criminal proceeding. See , e.g. , Neaderland v. Comm'r of Internal Revenue. , 424 F.2d 639, 641 (2nd Cir. 1970) ; United States v. $119,984.00 in U.S. Currency , 304 F.3d 165, 172-79 (2nd Cir. 2002).

The Supreme Court has also recognized that the common law civil concept of collateral estoppel is an implicitly incorporated concept within the double jeopardy protection of the Fifth Amendment to the United States Constitution. Ashe v. Swenson , 397 U.S. 436, 443-47, 90 S.Ct. 1189, 1194-96, 25 L.Ed.2d 469 (1970) (prior criminal acquittal precludes a subsequent criminal prosecution of the same defendant on the same facts where an essential element of the subsequent crime requires proof of a fact necessarily decided in the defendant's favor in the prior acquittal); Smith v. Dinwiddie , 510 F.3d 1180, 1186-88 (10th Cir. 2007) (construing Ashe ). See also Ferenc v. Dugger , 867 F.2d 1301, 1303 (11th Cir., 1989) (double jeopardy prohibits prosecution of a previously tried crime, while collateral estoppel bars "the government from relitigating certain facts" at issue in a prior prosecution in order to prove the facts of a subsequently charged crime), cert. denied , 493 U.S. 828, 110 S.Ct. 95, 107 L.Ed.2d 59 (1989) ; Harnage , 976 F.2d at 635 (criminal defendant may assert collateral estoppel to bar proof or argument regarding "facts necessarily established in a prior proceeding" or to "completely bar subsequent prosecution where one of the facts necessarily determined in the former trial is an essential element" of the subsequently charged crime). Accord Allen , 31 A.3d at 478 ; Thompson , 285 S.W.3d at 849.

In addition to contravening a criminal defendant's trial rights, the public policy and judicial efficiency concerns underlying collateral estoppel are in any event not as strong or significant in criminal cases as in civil cases. Gallardo-Mendez , 150 F.3d at 1243-44 (noting that application of collateral estoppel in criminal context would discourage plea bargaining in criminal cases and complicate judicial assessment of whether guilty pleas were "knowingly" made); Harnage , 976 F.2d at 634-36.