DA 20-0423

FILED

02/22/2022

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0423

IN THE SUPREME COURT OF THE STATE OF MONTANA

2022 MT 39N

STATE OF MONTANA,

     Plaintiff and Appellee,

  v.

RICHARD EDWARD ADSIT, JR.,

     Defendant and Appellant.

APPEAL FROM:    District Court of the Tenth Judicial District,
In and For the County of Judith Basin, Cause No. DC-2018-07
Honorable Jon A. Oldenburg, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Meghan Lulf Sutton, Law Office of Meghan Lulf Sutton, PLLC,
Great Falls, Montana

     For Appellee:

          Austin Knudson, Montana Attorney General, Jonathan M. Krauss,
Assistant Attorney General, Helena, Montana

          Heather Perry, Judith Basin County Attorney, Jean Adams, Special
Deputy County Attorney, Stanford, Montana

Submitted on Briefs:  February 2, 2022
Decided:  February 22, 2022

Filed:

              _____
                             Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1      Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent. Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2      Richard Edward Adsit, Jr., appeals a March 18, 2020 order and judgment and a November 2, 2020 amended final judgment and sentence from the Tenth Judicial District Court in Judith Basin County. He also appeals the District Court's June 21, 2019 and February 21, 2020 orders denying his motions for change of venue and to dismiss the case against him. The State charged Adsit with five counts of sexual assault and two counts of sexual intercourse without consent (SIWOC). A jury in Judith Basin County convicted Adsit on the two SIWOC charges and on two of the five sexual assault charges. Adsit's appeal raises numerous issues with the trial below: he argues that he was deprived of his constitutional right to a speedy trial; that the District Court should have granted his motion to change venue; that the State entered improper testimony meant to bolster a witness's credibility; that the jury instructions erroneously defined "without consent"; and that, if any one of these issues is insufficient for reversal on its own, then the doctrine of cumulative error should warrant a new trial. We affirm.

¶3      In 2012, Adsit worked as a schoolteacher and basketball coach in Geyser, Montana. He began a sexual relationship with a 15-year-old student, an athlete on the basketball team

he coached. The relationship continued for years, and in 2018, the student began to reach out to others about the impact it had on her and ultimately contacted law enforcement. The charging documents the State filed in May 2018 pointed to six specific instances of sexual contact in 2012: four occurrences of alleged assault and two occurrences of penetration arising to SIWOC. Closer to trial, as the State prepared its case, it amended the information to add another instance of sexual assault.

¶4 Adsit pleaded not guilty, and the parties prepared for trial. The initial trial was set for March 11, 2019, a date 297 days after the filing of charges. When the District Court suggested this schedule at a hearing held about a month after Adsit's arraignment, his counsel said, "That looks fine to us[.]" In December 2018, Adsit filed a motion for a continuance. He cited "issues concerning the discovery process in which both parties will need additional time to fulfill their obligations." According to Adsit, the State's hand-over of discovery materials had been too sluggish given its ongoing investigation of the case.

¶5 Following Adsit's unopposed motion, the District Court rescheduled trial for July 2019. It was about three weeks before this trial date that the State amended its information to add another count of sexual assault. Adsit subsequently moved for another continuance, again citing discovery problems, and stating a need to prepare for the additional charge. At the arraignment hearing on the amended information, the parties indicated their mutual agreement to a new trial date in March 2020.

¶6 In February 2020, Adsit moved to dismiss the charges as a speedy trial violation. He noted the 656-day gap that had accrued between the charges and the trial and argued that much of the delay should be attributed the State. After reviewing briefing on the matter

3

from Adsit and from the State, the District Court denied the motion. Adsit appeals that decision to this Court, and we affirm.

¶7 Both the United States Constitution, in its Sixth and Fourteenth Amendments, and the Montana Constitution, in Article II, Section 24, guarantee criminal defendants a right to a speedy trial. We have set forth a comprehensive framework for assessing alleged speedy trial violations. *See State v. Ariegwe*, 2007 MT 204, 338 Mont. 442, 167 P.3d 815. The *Ariegwe* approach involves balancing four factors: the length of the delay, the reasons for the delay, the defendant's response to the delay, and how the delay has prejudiced the defendant. *Ariegwe*, ¶¶ 106-11. When we review a district court order on a speedy trial motion, this Court reviews the district court's findings of fact to determine whether they are clearly erroneous and its conclusions of law for correctness. *State v. Huffine*, 2018 MT 175, ¶ 9, 392 Mont. 103, 422 P.3d 102.

¶8 The District Court's *Ariegwe* balancing in Adsit's case led it to conclude that no speedy trial violation had occurred. The District Court noted that the first almost-year of delay happened according to the initial agreed-upon trial schedule. We have noted that "institutional delay," i.e., that which is "inherent in the criminal justice system," weighs less heavily against the State. *State v. Stops*, 2013 MT 131, ¶ 27, 370 Mont. 226, 301 P.3d 811. The District Court also credited the period after Adsit's second continuance, when the parties again agreed to a new date, to institutional delay. Adsit's first continuance motion cited "discovery issues" that "both parties" would need time to resolve. Adsit argues that the discovery delays and the amendment to the information should render all the time the fault of the State because its continued investigation after filing charges lacked

4

due diligence. Adsit's assertions in this regard are largely conclusory, but the District Court did note in its order that the State should have amended its information sooner and that the State bore some blame for the slow pace of trial preparation.

¶9 The other factors in the balancing test consider the defendant's response to the delay and what kind of prejudice it caused. *Ariegwe*, ¶¶ 110-11; *State v. Steigelman*, 2013 MT 153, ¶¶ 18, 21, 370 Mont. 352, 302 P.3d 396. Here, the District Court noted that Adsit was not incarcerated prior to trial, that the delay did not materially impact his defense by impairing evidence, and that Adsit's reference to resolution by "both parties" and his own pace of discovery motions indicated an ability by the parties to work out the process with no significant harm to Adsit. Although Adsit asserted that the extent of the delay unduly prolonged his anxiety and concern, the District Court noted that he provided no affidavit or evidence detailing such an effect. On balance, therefore, the District Court concluded that the State had not violated Adsit's constitutional right to a speedy trial.

¶10 We agree with the District Court. Adsit's arguments for reversal largely rely on the prejudice of his delayed trial only in the abstract. He stresses the raw number of days of delay, notes the general effect that trial preparation had on his life, and complains that there would have been less delay had the State's assembly of witnesses gone more smoothly. But Adsit posits little to demonstrate why the circumstances of his case in particular rise to a speedy trial violation when its facts are balanced according to the *Ariegwe* factors. There is no question that the initial ten-month time set between charging and trial was a typical and agreed-upon institutional schedule. Adsit's trial was delayed for an additional year following his own motions to continue and his own agreement to schedule modifications.

5

Although issues with the State's preparation may have predicated these requests, Adsit has not shown that the State's actions were intentional or in bad faith or that any of the delay prejudiced the preparation of his defense, which is "the most important factor in our prejudice analysis." *Steigelman*, ¶ 29. The District Court's February 21, 2020 order denying Adsit's motion to dismiss is affirmed.

¶11 Prior to trial, Adsit also filed a motion requesting a change of venue. Adsit argued that in an area as small as Judith Basin County—population 2,072 at the time—news and chatter about his case would taint the jury pool. The District Court denied Adsit's motion. It noted that our standard for considering when "community sentiment" warrants a change of venue depends on a citizenry being so "enraged or inflamed" that it is unlikely to contain jurors "who can render a decision free from bias." *State v. Kingman*, 2011 MT 269, ¶ 42, 362 Mont. 330, 264 P.3d 1104. Although Adsit described the existence of general knowledge about the circumstances that led to his criminal charges, from rumors to news reporting, the District Court noted that the mere presence of publicity is insufficient grounds for a change of venue. *State v. Kaarma*, 2017 MT 24, ¶ 43, 386 Mont. 243, 390 P.3d 609 ("Informed jurors are not biased jurors."). Adsit had not demonstrated that the publicity was prejudicial or led to hostile attitudes that dictated the community's thoughts on guilt or innocence. *Kaarma*, ¶ 43; *Kingman*, ¶ 24.

¶12 We review a district court's order on such a motion for abuse of discretion. Section 46-13-203(1), MCA; *State v. Devlin*, 2009 MT 18, ¶ 15, 349 Mont. 67, 201 P.3d 791. On appeal, Adsit's brief argument on this matter suffers the same flaws as below. He says that given the "close-knit" community, it is likely at least one juror was biased against him, but

he raises no argument sufficient to satisfy the standards we have set forth in cases like *Kingman* and *Kaarma*. *See Kaarma*, ¶ 43; *Kingman*, ¶ 24 ("an irrepressibly hostile attitude pervad[ing] the community"). The District Court did not abuse its discretion in denying Adsit's change-of-venue motion, and the court's June 21, 2019 order is affirmed.

¶13 At trial, the State's case relied primarily on the testimony of the victim, and the State presented testimony from numerous other members of the community who could corroborate certain facts she described and other details about the dynamic between Adsit and the victim. The State also called an expert witness who, with no knowledge of this particular case, provided the jury information on childhood sexual abuse to add context that might help the jury understand the victim's testimony and things like her delay in reaching out for help. Adsit's approach in defense was to rebut the State's narrative about grooming and abuse with one describing a purely consensual relationship—"inappropriate, not illegal," his counsel argued at closing, "a fatal attraction perpetrated by a smart beautiful girl."

¶14 Adsit argues on appeal that the District Court should not have let the State's expert witness testify. According to Adsit, the effect of the expert's testimony was to improperly bolster the credibility of the victim. We do not permit a witness to "comment on the credibility of the alleged victim," nor do we allow a prosecutor to bolster a witness's credibility by offering personal opinions on a witness's truthfulness. *State v. Reams*, 2020 MT 326, ¶ 11, 402 Mont. 366, 477 P.3d 1118; *State v. Green*, 2009 MT 114, ¶ 33, 350 Mont. 141, 205 P.3d 798. Before trial began, Adsit raised a general, "standing" objection

7

with the District Court to any improper bolstering testimony, but he did not object at trial to any of the specific prosecutorial comments or witness testimony he describes on appeal.

¶15 We review a district court's decision on the admissibility of expert testimony for abuse of discretion. *Reams*, ¶ 9. We generally will not address arguments about a prosecutor's statements if they are not objected to at trial, unless they rise to plain error, a standard we have held is typically not met by allegations of improper comments on credibility in closing arguments. *State v. Walton*, 2014 MT 41, ¶¶ 10, 15, 374 Mont. 38, 318 P.3d 1024; *State v. Aker*, 2013 MT 253, ¶ 30, 371 Mont. 491, 310 P.3d 506. Here, we find that the District Court acted within its discretion in allowing the State's expert to testify and that no improper bolstering occurred that would rise to reversible error.

¶16 We have established a rule whereby an expert may testify about child sexual abuse because it is "a topic that many or most jurors have no common experience with." *Reams*,¶ 15. We have "repeatedly upheld the use of experts to explain complexities of child sexual abuse and to give guidance, which will help jurors understand and judge the victim's testimony," but we will not permit them to "comment on the credibility of the alleged victim" or to present statistics that would bolster an inference by the jury of the victim's truthfulness. *Reams*, ¶¶ 11, 15; *State v. Grimshaw*, 2020 MT 201, ¶¶ 25-28, 401 Mont. 27, 469 P.3d 702.

¶17 At Adsit's trial, the State's expert described typical patterns of "school predator" abuse and explained to the jury the typical process by which an adult may groom a student victim, disarming their discomfort, encouraging secrecy, exploiting vulnerabilities, and so forth. The expert also testified about the typical behavior of victims, whose shame, guilt,

8

or emotional dependency can prolong the time until they reckon with what has happened. During closing arguments, the prosecutor encouraged the jury to "compare [the victim's] testimony to what [the expert] said about reporting, testimony, and disclosure." Adsit argues that this presentation amounts to using the expert to bolster the victim's credibility—although the expert spoke generally of abuse in schools, Adsit argues that the subject matter discussed was so similar to the facts of his case as to amount to an opinion on him and the victim specifically.

¶18　However, other than infer that it might make the jury more likely to believe the victim, Adsit offers no detail regarding any of the expert's statements being too specific to the case. Adsit does point out one misstatement by the prosecutor in closing, describing the expert's testimony about a troubled home life making a victim susceptible to grooming. The prosecutor said that the expert "testified these issues may have contributed" to the victim's susceptibility, and the prosecutor used the victim's name instead of saying, more generally, "a victim." But Adsit raised no objection to this comment at trial, and we do not see this remark as rising to plain error or anything about the expert's testimony as improper "bolstering." Nothing the expert said reached beyond her general studies of school abuse, and none of her testimony opined on the victim's credibility. Nor did the prosecutor's statement offer an opinion on the victim's credibility. In context, this comment was more similar to those about "inferences to be drawn from various phases of evidence" that we have previously held do not amount to plain error. *State v. Smith*, 2021 MT 148, ¶¶ 43-46, 404 Mont. 245, 488 P.3d 531. And the presentation of the expert falls squarely within the

9

parameters we established in cases like *Reams*. It was well within the District Court's discretion to permit this testimony.

¶19 Adsit's next issue regards the meaning of "without consent." Here, we must take a step back and review this concept under the applicable laws. Adsit's five sexual assault charges arose under § 45-5-502, MCA (2011). This statute makes it a felony to "knowingly subject[] another person to any sexual contact without consent." The statutory scheme at the time contained no definition of "without consent" for this provision, so we applied a standard of instructing juries on the "ordinary meaning" of that phrase. *State v. Stevens*, 2002 MT 181, ¶ 59, 311 Mont. 52, 53 P.3d 356.

¶20 Adsit's two other charges fell under § 45-5-503, MCA (2011), criminalizing "sexual intercourse without consent" (SIWOC). The Legislature did provide a definition of "without consent" for this statute, at § 45-5-501, MCA (2011). This definition includes that a victim is incapable of consent if they are less than 16 years old. Thus, as long as the jury found that the two instances of penetration occurred as the State alleged, it could convict Adsit on these charges because the victim was categorically unable to consent. The jury did so.

¶21 In 2017, the Legislature modified the definitional statutes to align the concept of "consent" under both sexual assault and SIWOC. *See* § 45-5-501(1), MCA (2017). But for Adsit's case, the two definitions differed. The jury had to consider whether the incidences of sexual contact underlying the assault charges occurred "without consent" according to the "ordinary meaning" of that phrase. Age alone was insufficient; the sexual

10

assault statute at the time only invalidated consent for victims under 14 with perpetrators more than three years older. Section 45-5-502(5)(a)(ii), MCA (2011).

¶22 Adsit and the State offered the District Court competing versions of how to instruct the jury on this "ordinary meaning." Adsit's definition would have limited the meaning to "compelled to submit by force . . . . Force, fear, or threat is sufficient[.]" The State's suggestion defined consent as "a concurrence of wills" and used language from Black's Law Dictionary that described this concurrence as either express or implied and as "[v]oluntarily yielding the will to the proposition of another." The District Court instructed the jury using the definition the State proposed, and Adsit challenges that decision on appeal.

¶23 We review a district court's decision on jury instructions for abuse of discretion and to determine whether the instructions, as a whole, fully and fairly related the law applicable to the case. *State v. Resh*, 2019 MT 220, ¶ 10, 397 Mont. 254, 448 P.3d 1100. Adsit argues that the instructions the District Court gave here were an abuse of discretion because they did not accurately describe the law on consent. Adsit essentially contends that prior to 2017, the type of relationship he established with his 15-year-old student was legal and could not be viewed as sexual assault by any jury considering the meaning of "consent." Adsit appears to assert that only after the Legislature added language about youth and teacher/coach power imbalances did such conduct become assault-worthy.[1] But Adsit's

---

[1] *See* § 45-5-501(1)(b)(x), MCA (2017) ("[T]he victim is incapable of consent because the victim is . . . a student of an elementary, middle, junior high, or high school . . . and the perpetrator is not a student . . . and is an employee . . . who has ever had instructional, supervisory, disciplinary, or other authority over the student in a school setting.").

11

position is a misreading of what this Court meant when we described instructions on the ordinary meaning of "without consent." There is plenty of room within such meaning for a jury to discern that a student groomed by a teacher did not, in fact, consent to sexual contact, and willful agreement is certainly—as the dictionary quote offered by the State reveals—part of the ordinary understanding of consent. Under the instructions the District Court gave, the jury was free to consider the evidence and decide whether the victim's will concurred with Adsit's, and they were free to fully consider Adsit's arguments that she had consented. In fact, one could infer that the jury was in part swayed by Adsit's arguments because the jury acquitted Adsit on three of the five sexual assault charges.

¶24 Adsit's argument on appeal also relies on the non sequitur that the District Court's instruction defining "consent" failed to inform the jury what "without consent" means. The instructions did define only the former, as "a concurrence of wills." Adsit argues that it was improper for the jury to infer that "without consent" would mean "[without] a concurrence of wills," rather than be instructed as to the definition of the negative phrase direct from the statute. But the legislative comments on the statute at the time noted explicitly that "without consent" should have "its normal grammatical meaning." Section 45-5-502, MCA (2011) (Annotator's Note). Understanding "without consent" through a definition of "consent" perfectly encapsulates the application of "normal grammar," and no jury should need to be hand-held through the logic required to comprehend this step. We affirm and find the District Court's instructions were fair and within its discretion.

¶25 Finally, Adsit argues that the doctrine of cumulative error entitles him to a new trial. Under this doctrine, we have held that when one or more individual errors would be

12

insufficient alone to require reversal, their accumulated effect may prejudice a defendant's right to a fair trial sufficiently to warrant reversal. *State v. Smith*, 2020 MT 304, ¶ 16, 402 Mont. 206, 476 P.3d 1178. However, as explained above, most of the errors Adsit alleges were not error at all. We therefore decline this final invitation to reverse.

¶26 We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶27 Affirmed.

/S/ MIKE McGRATH

We Concur:

/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE